**UNITED STATES of America**

v.

**Jerry MARTYNIUK and James Bryan Hufford, Defendants.**

**Nos. CR 74–222, CR 74–272.**

United States District Court,
D. Oregon.

May 19, 1975.

---

Sidney I. Lezak, U. S. Atty., Kenneth C. Bauman, Asst. U. S. Atty., District of Oregon, Portland, Ore., for plaintiff.

Harry R. Kraus, Portland, Ore., for defendants.

## OPINION

SKOPIL, District Judge:

Defendants, Jerry Martyniuk and James Bryan Hufford, move to suppress evidence and quash a search warrant pursuant to Rule 41(e) Fed.R.Crim.P. They are charged with possession with intent to distribute amphetamines, in violation of 21 U.S.C. § 841(a)(1). On March 13, 1975, I held an evidentiary hearing on these motions.

Government agents suspected these defendants of engaging in illicit drug activity. On June 24, 1974, Hufford ordered two large drums of caffeine from the American Chemical Co. of Portland. He paid a deposit. On June 28, 1974, government agents learned of Hufford's order. When the drums arrived in Portland, the agents took one to Seattle and installed an electronic tracking device in it. They then returned the drum to the American Chemical warehouse.

The tracking device emits a radio signal which enables its location to be determined by directional finders. The "beeper" is not a recording device and does not transmit conversation.

On July 16 Hufford picked up the drums, paying the remaining purchase price. Hufford drove circuitously, avoiding visual surveillance, toward his destination. However, agents in an airplane eventually located Hufford's car. They would have been unable to follow Hufford without using the beeper.

Hufford led the agents to a rental garage at 2828 Prairie Road, Eugene, Oregon. He placed the drums in a rental garage unit and left. The agents later learned that Hufford rented the unit.

On July 18 agents entered the rental unit adjacent to Hufford's with the renter's permission. In Hufford's unit, through a crack in the wall and over a missing piece of sheetrock, they observed the drums of caffeine, together with a pickup truck and a rotary tableting machine.

On July 23 agents, pursuant to a court order, attached a beeper to the battery of the pickup truck. On August 26 this second beeper ceased transmitting. On August 28 the agents obtained a second court order to repair or replace the beeper. When they arrived at the rental garage, the pickup was gone. However, the second beeper began signaling again. They located the truck at a house in Dallas, Oregon.

The agents then obtained a warrant to search the premises in Dallas and another warrant for the rental garage in Eugene. They seized a variety of paraphernalia used in the manufacture of amphetamines.

Defendants contend that the agents illegally trespassed both when they placed a beeper in the drum of caffeine and when they entered the rental garage. Defendants argue that the agents invaded constitutionally protected areas of privacy without securing a search warrant. The trespasses yielded evidence used in the affidavits to establish probable cause for the search warrants. Defendants contend the warrants must be suppressed as fruits of the poisonous tree under the principles of Wong Sun v. U. S., 371 U.S. 471, 83 S.Ct. 407, 9 L. Ed.2d 441 (1963).

The government contends that the installation of the beeper in the drum of caffeine constituted neither a search nor a seizure cognizable under the Fourth Amendment. The government asserts that it installed the first beeper with the consent of the owner, American Chemical Co. It claims Hufford had no reasonable expectation of privacy while

traveling on Oregon public roads. Finally, the government argues that the agents lawfully looked into the interior of Hufford's rental garage in accordance with the "plain view" doctrine.

■ The threshold issue is whether the installation of the first beeper constituted a search within the ambience of the Fourth Amendment. The agents implanted the beeper to locate the ultimate destination of the drums. They were "looking for" evidence and instrumentalities of crime which would incriminate Hufford. The beeper effectively prevented Hufford from concealing the storage location of the drums, which were not contraband. The placing of the beeper constituted a search under the Fourth Amendment. See District of Columbia v. Little, 85 U.S.App. D.C. 242, 178 F.2d 13 (1950).

■ My next inquiry is whether the placing of the beeper breached any legitimate expectation of privacy on the part of Hufford. The so-called "trespass doctrine" no longer controls who may claim a Fourth Amendment privilege. My inquiry is not limited to whether one has a proprietary interest in the premises searched or in the property seized. My concern is whether a given individual in a given situation could have a reasonable expectation of privacy in the place or thing being searched—and whether that expectation was infringed. Jones v. United States 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

The beeper presents a unique situation. Essentially it augments visual surveillance, which is not proscribed by the Fourth Amendment. Hufford's journey from Portland to Eugene on the public highways was hardly in an area of any great expectation of privacy. See *Katz* at 351, 88 S.Ct. 507.

I do not equate the uninvited shadower in this instance with the "uninvited ear" described in wiretapping and "bugging" cases. The Supreme Court decisions dealing with the use of electronic surveillance have all involved the interception of conversations. Any surreptitious listening to the privately spoken word invades an area in which we have an extraordinary expectation of privacy. However, the uninvited shadower and the uninvited ear are not entirely discrete phenomena. The beeper does not monitor conversaion. It does monitor movement and location, both of which may be decidedly private.

My analysis must also consider the admonition of the Supreme Court that

"Constitutional provisions for the security of persons and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right as if it consisted more in sound than in substance." Boyd v. U. S., 116 U.S. 616, 635, 6 S.Ct. 524, 535, 29 L.Ed. 746 (1886).

Hufford did have some expectation of privacy regarding movement and location. Not only criminals take steps to ensure that they are not followed. People conceal the location of their personal property for legitimate purposes. The beeper makes this impossible. While Hufford's expectation of privacy may seem minimal when compared to that expected in private conversations, it is nevertheless real. I will not allow the government to ride roughshod over that right. The implanting of the beeper infringed an expectation of privacy protected by the Fourth Amendment.

The government advances contradictory positions. They contend that placing the beeper in the drum was not a search, nor did it invade any expectation of privacy. However, the government sought court approval to install the second and third beepers. The government claims that they could have accomplished the same result solely through visual surveillance. This contradicts the evidence. It also ignores a touchstone consideration in surveillance that "no greater invasion of privacy [be] permitted than was necessary under the circumstances".

Berger v. N. Y., 388 U.S. 41, 57, 87 S.Ct. 1873, 1883, 18 L.Ed.2d 1040 (1967).

Privacy is a cornerstone of a free society. The slightest intrusion should be viewed with circumspection if not alarm. The government seeks a new exception to the protection of the Fourth Amendment. See *Katz*, 389 U.S. at 358, 88 S. Ct. 507. I refuse to grant it.

Any decision in implanting a beeper regarding the amount of intrusion and the expectation of privacy should be made by a neutral magistrate, not by the agents. Justice Jackson succinctly described the need for judicial interposition:

> "The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferretin out crime. . . . When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent." Johnson v. U. S., 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

■ The agents implanted the first beeper without court approval. It is "unreasonable" unless it falls within one of the exceptions to the warrant requirements of the Fourth Amendment. The beeper was not needed to protect the agents' safety, nor could it prevent the destruction of evidence. No "exigent circumstances" prevented the agents from obtaining prior court approval. The implanting of the beeper in the drum of caffeine violated the requirements for warrantless searches set forth in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

■ The agents could not have determined the location of the rental garage "but for" the beeper. Thereafter a tainted avenue led them to the house in Dallas. No independent source intervened. The evidence seized at the house in Dallas and the rental garage in Eugene was the fruit of a poisonous tree and cannot be used against Hufford. Silverthorne Lumber Co. v. U. S., 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920); Wong Sun v. U. S., *supra*. I grant defendant Hufford's motion to suppress.

The agent's view of the rental garage from an adjacent stall was permissible. He did not trespass. He observed what was in plain view. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L. Ed.2d 1067 (1968); James v. United States, 135 U.S.App.D.C. 314, 418 F.2d 1150 (1969).

■ The government contends that defendant Martyniuk lacks standing to contest the illegality of the placement of the beeper. I agree.

Hufford purchased the drum of caffeine. He transported it in his car. He stored the drum in his rental garage. Martyniuk had no reasonable expectation of privacy regarding the movement or location of the drum.

A "person aggrieved by an unlawful search and seizure" has standing to contest it.

> "The established principle is that suppression of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence." Alderman v. U. S., 394 U.S. 165, 171–172, 89 S.Ct. 961, 965, 22 L.Ed.2d 176 (1969).

The Court in *Alderman* rejected the contention that evidence inadmissible against one defendant is automatically inadmissible against a codefendant. The codefendant must show that he owned the seized property, or that he had a substantial interest in the premises searched, or that he was the victim

of the invasion of privacy because the search was directed at him. Jones v. U. S., *supra* 362 U.S. at 261–262, 80 S.Ct. 725.

In Brown v. U. S., 411 U.S. 223, 93 S. Ct. 1565, 36 L.Ed.2d 208 (1973), the Court held that in offenses where possession is an essential element of the crime, possession of the seized evidence at the time of the search and seizure violation also confers standing to contest.

Defendants do not contest the actual search with a warrant of the Dallas and Eugene premises. Rather, they claim that the illegal trespasses into the drum and the rental garage tainted the agents' affidavits which provided probable cause for the issuance of the warrant. The taint from installing the beeper applies only to Hufford.

Martyniuk had no possessory or proprietary interest in the drums of caffeine, nor was he in possession of the drums while the beeper was used. The placing of the beeper was not directed at him. Martyniuk lacks standing to contest the search and seizure. I deny his motion.