**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Jeffrey Leonard HOLMES et al.,**
**Defendants-Appellees.**

**No. 74–2419.**

United States Court of Appeals,
Fifth Circuit.

Aug. 20, 1976.

William Stafford, U. S. Atty., Stewart J. Carrouth, Asst. U. S. Atty., Tallahassee, Fla., Mervyn Hamburg, Appellate Sec., Crim. Div., U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Joseph S. Oteri, Martin G. Weinberg, Boston, Mass., for Ashley, Willy and Green.

Selig I. Goldin, Gainesville, Fla., for Holmes, Okus, Moody, Moody, DeWitt & Williams.

Before BROWN, Chief Judge, TUTTLE, GEWIN, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, RONEY, GEE, TJOFLAT and HILL, Circuit Judges.*

PER CURIAM:

I.

The holdings of the United States District Court for the Northern District of Florida in *United States of America, Plaintiff, v. Jeffrey Leonard Holmes, et al., Defendants,* Gainesville Criminal No. 73–27, contained in its Order of April 25, 1974, regarding the installation of the battery-operated beacon or "beeper" in the early evening of August 3, 1973, under the right rear wheel of the appellee Jeffrey Holmes' van, while it was parked on a lot outside a lounge in Gainesville, Florida, to-wit: (1) that the use of the beacon to monitor the movements of the van was a search subject to the Fourth Amendment, (2) that such search was illegal because of the failure to obtain a warrant for its installation, (3) that an application for a warrant would have been rejected because no probable cause existed to justify its installation, (4) that no evidence at the Moody property would have been discovered, nor would the van with its contraband have been intercepted without the aid of the beacon, and (5) the suppression of evidence as the "fruit" of the initial

* Judge Wisdom did not participate in this decision because of illness.

search, as to such issues [1] are each affirmed by an equally divided court. See, e. g., *School Board of City of Richmond v. State Board of Education*, 1973, 412 U.S. 92, 93 S.Ct. 1952, 36 L.Ed.2d 771; *Rice v. Sioux City Cemetery*, 1954, 348 U.S. 880, 75 S.Ct. 122, 99 L.Ed. 693, on rehearing, 1955, 349 U.S. 70, 73, 75 S.Ct. 614, 99 L.Ed. 897; *Carter v. United States*, 5 Cir., 1963, 325 F.2d 697, cert. denied 1964, 377 U.S. 946, 84 S.Ct. 1353, 12 L.Ed.2d 308; 5 Am.Jur.2d, Appeal and Error, § 902, pp. 338, 339.

## II.

As to each of the remaining issues involved in said appeal [2] the court en banc adopts the panel opinion.

AFFIRMED in Part; REVERSED in Part.

AINSWORTH, Circuit Judge, dissenting, with whom Chief Judge BROWN and Judges GEWIN, RONEY, GEE, TJOFLAT and JAMES C. HILL join:

## I. INSTALLATION AND USE OF THE ELECTRONIC BEACON

This is a search and seizure case of first impression, placed *en banc* because of its exceptional importance. The Court in its *en banc* consideration divided 8 to 8, on a determination of whether installation and use of an electronic radio tracking device affixed under the fender of defendant Holmes' van by a government agent without a warrant, constituted an illegal search in violation of the Fourth Amendment.

Thus, by this Court's evenly divided vote, the District Court's decision is affirmed, and the large quantity of contraband evidence (marijuana) seized by government agents is suppressed as the "fruit" of the initial placing of the beeper. *See* Part I of the *en banc* per curiam.

I register my disagreement and dissent with the result reached by the Court. In my view the Court should have held that installation of the beacon or beeper was not an illegal search, and was entirely reasonable under the circumstances presented, either under a determination of reasonable suspicion or probable cause.

It is appropriate also to record disappointment with the failure of a majority of the Court to approve the use of developing electronic means of investigative surveillance, such as the beeper under the circumstances here, for the apprehension of persons engaged in criminal activity. Modern science has provided the device and law enforcement officers should be allowed to use it under the facts of this case.

The question presented is whether use of the beeper was reasonable under the facts and circumstances. The Government does not seek a ruling that its agents may indiscriminately place a beeper on vehicles and persons. It does not ask that the Court consent to the "unrestrained" use of the beeper. Its position is that if reasonable suspicion or probable cause are present, use of the beeper is proper.

Thus the Government does not contend that it should be allowed to invade the rights of privacy of the people by attaching "beepers" or "bugs" as and when it pleases. Such a case is not presented here.

The Government does not request a broad and sweeping ruling. But if there is reasonable cause to believe that a crime is in progress or about to be committed, use of the beeper by government agents on the vehicle of the person involved, should be approved. That is all the Government desires.

The facts justifying use of the beeper in this case are unusually strong. Undercover Agent Cox had been negotiating with defendant Holmes for the purchase of a large quantity of marijuana (500 pounds originally, down to a final agreed amount of 300

---

1. Discussed in the panel opinion, *United States v. Holmes*, 5 Cir. 1975, 521 F.2d 859, 864–867, under the caption "Installation and Use of the Electronic Beacon".

2. Dealt with by the panel opinion, 521 F.2d 859, 867–872, under the respective headings of "The Issue of Standing", "The Search of the Shed", "Standing of Ashley, Willy and Green", and "Validity of the Search Warrant".

pounds) for several days in the latter part of July, into early August. Holmes wanted to see the money. So a meeting was agreed to for the early evening of Friday, August 3, at the ABC Lounge in Gainesville where Cox would display the money, $45,500, for the purchase. A number of other agents in this joint federal/state case who were privy to Cox's information about his dealings with Holmes took up surveillance at the lounge before and during the meeting. The beeper was attached by one of the agents by use of a strong self-contained magnet to the underside of the fender of the Holmes van while Cox and Holmes were inside the lounge furthering their arrangements for purchase of the narcotics. It was placed on the van to secure evidence of crime by tracking the movements of the van.

To contend that in the present case the government agents had only "the merest of suspicions," or that their actions were based only "upon an unfounded suspicion" is to ignore the true facts of the case, which do not seem to be disputed. Yet the District Judge's opinion does not even mention Cox's meeting with Holmes on August 3 to display the money for the marijuana purchase, though he states that is the date the beeper was attached to the van. What Cox and Holmes were doing in the ABC Lounge at the time is critical to justification for the installation of the beeper. Agent Cox's display of the large sum of cash for the marijuana purchase from defendant Holmes, on that occasion, formed the reasonable basis for placing the beeper on the van then situated in the public parking lot of the lounge. Incredibly the District Judge must have thought these facts were of no importance since he did not even mention them in his written opinion suppressing the contraband evidence. The error is apparent.

The agents outside the lounge knew why Cox was meeting with Holmes. "Everybody was involved," testified Cox. They were aware of the whole transaction and were there to give support to Cox. After Holmes arrived in the van one of them attached the beeper in order to trace the van's movements. They knew that Holmes

had said that the 300 pounds of marijuana in this purchase was only part of a large shipment which was expected to come into the Florida coastline. The van was suitable for the transportation of large amounts of marijuana. Obviously they were interested in seizing the entire quantity, wherever it might be.

Requiring a search warrant under the exigent circumstances presented here ignores the practicalities of the situation. The agents did not know when they might have another chance, if at all, to install the beeper on the vehicle. Installation of the beeper here was only a minimal intrusion. In the recent case of *Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974), the Supreme Court held that there was no violation of the Fourth Amendment where police having probable cause but without a warrant examined a tire on the wheel of defendant's automobile and took paint scrapings from the exterior of the vehicle left in a public parking lot, the Court stating, "[W]e fail to comprehend what expectation of privacy was infringed." *Id.,* 417 U.S. at 591–592, 94 S.Ct. at 2470. The Court also said:

> "The search of an automobile is far less intrusive on the rights protected by the Fourth Amendment than the search of one's person or of a building." *Almeida-Sanchez v. United States,* 413 U.S. 266, 279, 93 S.Ct. 2535, 2542, 37 L.Ed.2d 596 (1973) (Powell, J., concurring). One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. A car has little capacity for escaping public scrutiny. It travels public thoroughfares where its occupants and its contents are in plain view. See *People v. Case,* 220 Mich. 379, 388–389, 190 N.W. 289, 292 (1922). "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz v. United States,* 389 U.S. 347, at 351, 88 S.Ct. 507, at 511, 19 L.Ed.2d 576; *United States v. Dionisio,* 410 U.S. 1, at 14, 93 S.Ct. 764, at 771, 35 L.Ed.2d 67. This is

not to say that no part of the interior of an automobile has Fourth Amendment protection; the exercise of a desire to be mobile does not, of course, waive one's right to be free of unreasonable government intrusion. But insofar as Fourth Amendment protection extends to a motor vehicle, it is the right to privacy that is the touchstone of our inquiry.

*Id.,* 417 U.S. at 590–591, 94 S.Ct. at 2469–2470. *See also Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

It is by no means certain that attaching the beeper constituted a "search" under the circumstances here. This Court held in its *en banc* decision in *United States v. Johnson,* 5 Cir., 1970, 431 F.2d 441, "that inspections of motor vehicles performed by police officers, who were entitled to be on the property where the vehicles were located, which in no way damaged the vehicles and were limited to determining the correct identification numbers thereof were not searches within the meaning of the Fourth Amendment; and that alternatively, if either of such inspections constituted a Fourth Amendment search, then no search warrant was necessary because such inspections were reasonable and did not violate the right of the people to be secure in their persons, houses, papers or effects." *See also United States v. Polk,* 5 Cir., 1976, 433 F.2d 644.

In *United States v. Perez,* 5 Cir., 1976, 526 F.2d 859, we approved the use of an electronic tracking device, a so-called "bug," placed by police officers in a TV set which they bartered for heroin. By means of the "bug" police officers were able to track defendant to the site of his arrest.[1]

Chief Judge Brown, writing for the panel in that case, said, "Surely, the trailing of a suspect by utilizing an electronic bug on moveable property constituting a direct part of the negotiated transaction seems no more objectionable than placing a 'tail' on his movements or the recording of the serial numbers of money given in exchange for illegal contraband or the marking of property passed in such an exchange so that it can later be identified."[2] *Id.,* 526 F.2d at 863.

There are two District Court decisions on the beeper issue. The panel opinion (footnote 8) refers to one of these, *United States v. Martyniuk,* D.C.Or., 1975, 395 F.Supp. 42, which it states reached a conclusion identical to that of the panel opinion. It is true that the District Judge in that case ruled that the use of the beeper was illegal but the opinion reveals only that government agents "suspected" the defendants of engaging in illicit drug activity and that they implanted a beeper in large drums of caffeine to locate the ultimate destination of the drums. The District Court held that it did not equate the government agents' action with wiretapping and bugging cases for "[a]ny surreptitious listening to the privately spoken word invades an area in which we have an extraordinary expectation of privacy." *Id.,* 395 F.Supp. at 44. However, the Court held that the implanting of the beeper in the drums violated the requirements for warrantless searches. Nevertheless, the Court went on to hold that the defendant lacked standing to contest the illegality of the placement of the beeper. Therefore it is doubtful that *Martyniuk* lends support to the Court's decision.

The other District Court decision, *United States v. Carpenter,* D.Mass., 1975, 403

---

1. In another beeper case, *United States v. Bishop,* 5 Cir., 1976, 530 F.2d 1156, we upheld the tracking of bank robbers where bank officials had hidden a small transmitter in a package of specially marked "bait" money which the bandits had stolen in the robbery. The signal led the police officers directly to the perpetrators of the crime. We found no merit in defendants' contention that the arrest violated the Louisiana Code of Criminal Procedure in that

use of an electronic device to bring about the arrest was not legal under the Louisiana definition of "close pursuit." However, the Fourth Amendment was not at issue.

2. *Perez* distinguished the panel holding in *Holmes* because the bug was installed while the TV set was in the rightful possession of the government agents. Nevertheless, no Fourth Amendment violation was found in *Perez.*

F.Supp. 361, upheld the use of a beeper which was inserted by United States Customs agents at Miami who, without a warrant, opened two packages addressed to defendant Carpenter at a Massachusetts address, having been sent from Colombia. The packages were found to contain cocaine. Some of the cocaine was removed and seized as evidence. A beeper was inserted, the packages were forwarded to addressee and the beeper led them to the defendant who was arrested when he picked up his mail and was given the packages in question. The agents executed a search warrant at that time in seizing the contraband. The Court declined to suppress the evidence on Fourth Amendment grounds and held that under the facts of the case the beeper is not such an intrusion as to merit the procedural safeguards sought by defendants. The Court also said that "The procedure used here is far less an intrusion than wire tapping or bugging."

As I have said, the agents knew the circumstances of the Cox-Holmes meeting. They had a right to be on the public parking lot of the lounge. There was no invasion of privacy. The vehicle was not opened, it was not searched. The beeper was installed on the exterior of the van while Cox was arranging to show the purchase money to Holmes. There was no reasonable expectation of privacy of the vehicle in the public place in which it rested.

No one questions the right of visual surveillance of the van by government agents. There should likewise be no question of the right of electronic surveillance by use of a beeper, where government agents have reason to know at the time that a crime is in the course of commission by the vehicle's owner.

The District Court (and the panel) placed strong emphasis upon *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), in which the Supreme Court held that the Government's activities in electronically listening to and recording petitioner's words by the attaching of an electronic listening and recording device to the outside of the public telephone booth from which Katz had placed his calls, constituted a search and seizure within the meaning of the Fourth Amendment and was forbidden.

There is little similarity between the facts in *Katz* and those here. The device in *Katz* was used to overhear private telephone conversations conducted in a closed telephone booth. Obviously there is an expectation of privacy in such circumstances. Here the beeper did not intercept conversations. It was affixed as a result of knowledge of government agents relative to a large marijuana purchase for a substantial amount of cash and the van was suitable for transportation of the marijuana being purchased. There was sufficient cause for installation of the beeper. *Katz* is therefore inapposite.

The *en banc* per curiam discloses that a majority of the Court affirmed the panel opinion insofar as the issues dealt with under the following headings are concerned: "The Issue of Standing," "The Search of the Shed," "Standing of Ashley, Willy and Green," and "Validity of the Search Warrant." I dissent from the majority decision.

## II. THE ISSUE OF STANDING

This heading deals with the seized contraband evidence which is challenged by defendants on the ground that it is the consequence of an illegal search through the warrantless use of the beeper. It is concerned with the standing to contest installation and use of the beeper, of defendant Holmes, owner of the van, and its occupants, DeWitt and Williams, and of the Moodys and Okus.

As the Supreme Court has pointed out, the suppression of evidence because of a Fourth Amendment violation "can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Coconspirators and codefendants have been accorded no special standing." *Alderman v. United States,* 394 U.S. 165, 171–172, 89 S.Ct. 961, 965, 22 L.Ed.2d 176 (1969). The panel opin-

ion recognizes this principle. 521 F.2d at 867.

In determining whether standing exists among the several defendants it must be remembered that "it is entirely proper to require of one who seeks to challenge the legality of a search as the basis for suppressing relevant evidence that he allege, and if the allegation be disputed that he establish, that he himself was the victim of an invasion of privacy." *Jones v. United States,* 362 U.S. 257, 261, 80 S.Ct. 725, 731, 4 L.Ed.2d 697 (1960). In other words, a person claiming standing has the burden of proof to establish his status as such. In this case none of the defendants testified even though the Supreme Court has held that "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt . . . ." *Simmons v. United States,* 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968). Thus any or all of the defendants could have testified in support of their burden of establishing standing, had they desired to do, and without waiver or loss of any constitutional right.

## 1. DeWitt and Williams.

Originally the Government conceded the standing of DeWitt and Williams in the beeper context, but it has now withdrawn that concession. As the Government now points out, DeWitt and Williams were not known in the case until they were apprehended in Gainesville as occupants of the Holmes van. Accordingly, they were not known when the beeper was installed. The record is silent on whether they were ever present on the Moody property and inconclusive as to whether the beeper had anything to do with their arrest. DeWitt and Williams had no expectation of privacy at the time of the initial installation and use of the beeper on the van. They were arrested because Lieutenant McGraw learned from Agent Cox of the telephone conversation between Holmes and Cox that delivery of the marijuana was about to take place.

McGraw then encountered the van on the highway and recognized it, checked the license number to be sure it was the Holmes van, followed the van and noticed its heavily loaded condition at which time it was stopped, the marijuana seized, and the occupants arrested. Probable cause existed to stop the van since Holmes had informed Cox that the marijuana was on its way to Gainesville in Holmes' van. Under the circumstances, the exclusionary rule is being stretched beyond reasonable limits to accord standing to DeWitt and Williams relative to the installation and use of the beeper.

## 2. Holmes.

Originally Holmes had standing relative to installation of the beeper on his vehicle but he lacked standing after he turned the van over to other persons to obtain the marijuana and return to Gainesville. His ownership of the van does not confer standing to object to the search and seizure thereof while it was being occupied by DeWitt and Holmes.

In *United States v. Nunn,* 5 Cir., 1976, 525 F.2d 958, we declined to accord standing to the owner of a pickup truck being used to transport illegal aliens, the owner not being the driver or an occupant at the time it was seized. We held that the "defendant cannot now claim any reasonable expectation of privacy in such circumstances." (footnote omitted) *Id.,* 525 F.2d at 959. The holding in *Nunn* is appropriate to a determination here that Holmes lacked standing to contest the seizure of marijuana in his van which he was not driving or occupying at the time it was seized.

## 3. The Moodys and Okus.

The panel opinion held that the Moodys' and Okus' standing to challenge the use of the beeper "ceased when the van left the Moody property" and therefore that the marijuana seized from the van should not be suppressed "because this seizure would have occurred regardless of whether the van ever entered the Moody property." 521 F.2d at 868. Despite this holding, the panel

nevertheless conferred standing upon the Moodys and Okus because they were charged in Count 2 with a possessory offense and thereby, according to the panel opinion, had "automatic standing." The result accomplished appears to be inconsistent. As we have shown, the Moodys and Okus could have testified, without impairing their constitutional rights (see *Simmons v. United States, supra),* to any invasion of their privacy or expectation of privacy or any interest in the property seized, but they failed to do so and relied entirely on the testimony of the government agents. Thus we have no testimony from them upon which to base a claim of standing. The panel opinion recognizes that the van was off of the Moody property when it was seized and therefore that these persons do not have standing except for the so-called "automatic standing" rationale. It is difficult to understand what claim of invasion of privacy the Moodys and Okus have in the seizure of the van which occurred many miles from the Moody property, at which they were not present, and without any evidence by them of any invasion of their privacy or of an interest in the seized contraband. Surely the exclusionary rule will not support such an unreasonable result.[3]

### III. THE SEARCH OF THE SHED

The District Judge's holding with which the panel agreed, that there was ample evidentiary support that there was a search of the shed within the curtilage of the Moody property, was clearly erroneous. Though this is an alternative ground for suppression of the evidence, it is necessary to dissent also from this ruling. Agent Vipperman was the only officer who got close to the shed. He was directed to go into the wooded area behind the Moody residence to check for the Holmes vehicle. He approached around the back in the woods, through a marshy, heavily grassed area situated between the St. Johns River and the Moody barn and residence. He was under cover of dense vegetation and saw a

small shed with a large hole in the back part thereof. He could see through the hole in the shed and could smell the odor of what he believed to be marijuana. He also saw some croker sacks across the shed against the wall which appeared to be packaged marijuana. The back of the shed or barn is on the yard line with heavy bushes behind it and Agent Vipperman was in that area behind the shed at the time. There is no evidence that Vipperman trespassed on the curtilage. Nor is there any showing in the record as to the limits of the Moody property. As we have said, the Moodys did not testify so we are without any information from them, or from any other source, as to the actual property boundaries. There were no fences about the property and the shed which was in rundown condition backed into the woods from which, in apparent plain view, Agent Vipperman saw the croker sacks and smelled the strong odor of marijuana. It was error, therefore, to hold that Agent Vipperman was a trespasser on the curtilage as he looked into the shed from his position in the heavy cover or that his observation through the large hole in the shed was an illegal search.

The panel's holding, therefore, that the evidence derived from Agent Vipperman's activities must be suppressed is erroneous, and it was also error to hold that the evidence seized on the Moody property was properly suppressed insofar as it ran in favor of the Moodys and Okus. The search and seizure which occurred at the Moody premises resulted from a valid search warrant which we shall discuss later.

The holding that Okus is entitled to suppression of the evidence seized on the Moody property is likewise contrary to law. Okus did not testify. I infer, however, that he was a visitor at the Moody residence where he was arrested. Certainly he has no standing to contest the search of the shed and the seizure there. There is nothing in the record to indicate Okus' presence in any place other than the Moody residence. And

---

**3.** It is apparently for such reasons that there is considerable doubt now whether the automatic standing rule is still viable. *See Brown v. Unit-* ed *States,* 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973).

he cannot properly claim any expectation of privacy in the rundown shed in the outlying premises. It is abundantly clear that Okus had no expectation of privacy in the out-buildings, such as the shed, on the Moody property; therefore, that Okus lacked standing.

## IV. STANDING OF ASHLEY, WILLY AND GREEN

The panel opinion holds that Ashley, Willy and Green lacked standing to challenge the stop and search of the van in Gainesville since they were not occupants, do not assert any proprietary interest in the vehicle and were not charged with the possessory offense. The panel also holds that these men lacked standing to challenge the legality of Vipperman's so-called search of the shed and search of the Moody home pursuant to the search warrant. Since they assert no proprietary interest in the Moody property and were not present at the time of the search, they have failed to show that they had any reasonable expectation of privacy in the premises. I agree with the panel's holding (reversing the District Court) that Ashley, Willy and Green lacked standing to challenge any of the searches conducted.

## V. VALIDITY OF THE SEARCH WARRANT

Agent Henderson's affidavit in support of the search warrant is set forth in full in footnote 22 of the panel opinion. A fair reading of the affidavit without the injection of hypertechnical judicial interpretations fully justifies the conclusion that the affidavit complied with the law.

The Supreme Court in its decision in *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), has provided practical guidance in this regard. The Court said:

> If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic

fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

*Id.,* 380 U.S. at 108, 85 S.Ct. at 746.

The panel opinion is critical of the affidavit supporting the search warrant. The opinion states: "The affidavit fails to set forth the source of the affiant's information. The Putnam County judge issuing the warrant could not determine whether the information was gained firsthand or from others, and if from others, he had no reason to credit their reliability." 521 F.2d at 872. In the footnote to the foregoing quotation the opinion states that as to affiant's affidavit, "The remainder of his information was secondhand. Although he was sent into the woods, he saw nothing."

I examine the affidavit in light of the criticism by the panel opinion which it holds is fatal to the issuance of the search warrant. The affidavit is by Wayne Henderson who states that in his capacity as "agent of the Drug Enforcement Agency of the U.S. Department of Justice," he has reason to believe that upon the premises located in Putnam County, Florida (the premises involved here), certain illegal drugs (marijuana) are kept. Affiant Henderson then states the facts establishing the grounds for the application are that on August 3, 1973, Holmes offered to sell 300 pounds of marijuana to an undercover agent; that an electronic beacon device was attached to the van; that on August 5, 1973, the beacon was determined to be in the vicinity of Federal Point, Florida, by ground and aircraft surveillance; that on said day the vehicle was stopped in Gainesville en route from Federal Point and contained 1700 pounds of marijuana. That subsequent investigation and surveillance of the area in which the beacon was determined to be, in

the vicinity of Federal Point, revealed that the van was located behind the white house described with an outbuilding nearby; that officers in the vicinity of the described location could smell a strong odor of marijuana and overheard voices describing marijuana transactions; also, that noises associated with the packaging of marijuana were heard and burlap bags such as are used to package marijuana were observed. Given the *Ventresca* test and interpreting the affidavit "in a commonsense and realistic fashion" without "a grudging or negative attitude by reviewing courts toward warrants," the inference is clear that Agent Henderson derived his information from a fellow law enforcement officer, the undercover agent referred to, and therefore the magistrate issuing the warrant had no reason to question the reliability of a law enforcement officer. The panel's reference to lack of "firsthand" information and to "secondhand" information as reasons for holding the affidavit deficient is erroneous as a matter of law. It was entirely proper for Agent Henderson to make the affidavit in part on the basis of information provided by a fellow undercover agent. As the Supreme Court said in *Ventresca, supra,* "Observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." (Footnote with numerous cases cited omitted.) *Id.,* 380 U.S. at 111, 85 S.Ct. at 747. Paraphrasing the holding in *Ventresca,* "[U]pon reading the affidavit as a whole, it becomes clear that the detailed observations recounted in the affidavit cannot fairly be regarded-as having been made in any significant part by persons other than full-time" agents of the Drug Enforcement Administration and the cooperating state and county agents. *Id.,* 380 U.S. at 111, 85 S.Ct. at 747. In this circuit's decision, *United States v. Hayles,* 5 Cir., 1973, 471 F.2d 788, 793 (Gewin, J.), we considered another affidavit supporting the issuance of a search warrant where objection was made that information contained in the affidavit was not based on the personal knowledge of the affiant and held:

The search warrant to which appellants object was issued upon an affidavit setting out ample information to sustain an independent determination that probable cause existed; although the information contained in the affidavit was not based on the personal knowledge of the affiant, it was based on the personal observations of a fellow law enforcement official engaged in the same investigation and as such could be presumed reliable. (Footnote citing *Ventresca* case in support of the text omitted.)

The cases cited are merely illustrative for the body of law is ample that personal firsthand observations of an affiant government agent are not required for the supporting affidavit. One such case is *United States v. McCoy,* 10 Cir., 1973, 478 F.2d 176, 179, in which that circuit held:

That an affidavit for a search warrant may be based on hearsay is well established. *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), and *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). Indeed, such is usually the case.

In that case the affidavit made by an FBI agent for issuance of a search warrant contained statements all based on information acquired by affiant from other FBI agents. The Tenth Circuit in upholding the validity of the affidavit and search warrant held:

In this regard *see United States v. Ventresca,* 380 U.S. 102 (1965), where it was held at page 111, 85 S.Ct. 741, 13 L.Ed.2d 684 that observations of a fellow Government officer engaged in a common investigation may form the basis for a warrant applied for by one of their number. So, then, it is quite true that the affidavit contained some double hearsay, and perhaps even a bit of triple hearsay. However, such fact in and of itself does not render the affidavit insufficient. In determining the sufficiency of an affidavit, the test is whether the affidavit sets forth sufficient underlying facts and circumstances to the end that the magistrate can make a detached judgment as

to the reliability of the various sources of the affiant's information.

*Id.,* 478 F.2d at 179.

A commonsense reading of the affidavit also discloses information relative to a continuing investigation by ground and aircraft surveillance, the location by the beacon of the area of the barn and the white house (the Moody residence), and the detection by officers in the vicinity of an outbuilding behind the white house of the strong odor of marijuana and observation of the burlap bags used to package marijuana.[4] We, therefore, have no doubt about the sufficiency of the affidavit and the legality of the resulting search warrant.

## CONCLUSION

I would hold, therefore, that use of the electronic beeper, under the circumstances

4. The panel opinion in footnote 23 points to several factual inaccuracies in affiant Wayne Henderson's affidavit. These are of small moment since the other portions of the affidavit, the most important ones, are sufficient to provide the probable cause necessary for the issuance of the search warrant. *See United States v. Thomas,* 5 Cir., 1973, 489 F.2d 664.

5. As I have pointed out, this is a case of first impression and there is no appellate decision directly in point though we have approved the use of the beeper in the circumstances described in *United States v. Perez, supra,* and *United States v. Bishop, supra.* There is nothing in the record to indicate that the law enforcement officers here were not acting in reasonable good faith in placing the beeper on the Holmes van in this case. *See United States v. Peltier,* 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975). This is an additional reason why the exclusionary rule should not be applied in this case.

I believe we must be concerned with the admonition of the Supreme Court in its very recent case of *Stone v. Powell,* —— U.S. ——, 96 S.Ct. 3037, 48 L.Ed.2d —— (1976) (44 L.W. 5313 decided July 6, 1976), where the Court said, "While courts, of course, must ever be concerned with preserving the integrity of the judicial process, this concern has limited force as a justification for the exclusion of highly probative evidence." (Footnote omitted.) *Id.,* —— U.S. at ——, 96 S.Ct. at 3047.

As the Court pointed out in *Stone v. Powell, supra,* a "pragmatic analysis of the exclusionary rule's usefulness" . . . "also finds expression in the standing requirement." In that regard Justice Powell, writing for the Court, said:

here, was fully authorized by reasonable application of Fourth Amendment principles.

Further, the panel opinion erroneously confers standing on defendants to contest the legality of the searches and seizures of contraband.

My view is that the exclusionary rule has been applied in a most stringent and impractical manner in this case, as a result of which most of those charged with narcotics violations herein will never even be tried for the offense for which they were indicted. Accordingly, law enforcement officers charged with the serious duty of curtailing the flow of illegal narcotics, the basis for so much crime in this country, derive no comfort from the result reached by the *en banc* Court in this case.[5]

Standing to invoke the exclusionary rule has been found to exist only when the Government attempts to use illegally obtained evidence to incriminate the victim of the illegal search. *Brown v. United States,* 411 U.S. 223 [93 S.Ct. 1565, 36 L.Ed.2d 208] (1973); *Alderman v. United States,* 394 U.S. 165 [89 S.Ct. 961, 22 L.Ed.2d 176]; *Wong Sun v. United States,* 371 U.S. 471, 491–492 [83 S.Ct. 407, 9 L.Ed.2d 441] (1963). See *Jones v. United States,* 362 U.S. 257, 261 [80 S.Ct. 725, 4 L.Ed.2d 697] (1960). The standing requirement is premised on the view that the "additional benefits of extending the rule" to defendants other than the victim of the search or seizure are outweighed by the "further encroachment upon the public interest in prosecuting those accused of crime and having them acquitted or convicted on the basis of all the evidence which exposes the truth." *Alderman v. United States, supra,* 394 U.S. at 174–175 [89 S.Ct. 961].
(Footnote omitted.) *Id.,* —— U.S. at ——, 96 S.Ct. at 3049.

Consideration must also be given to another very recent case of the Supreme Court, namely, *South Dakota v. Opperman,* —— U.S. ——, 96 S.Ct. 3092, 48 L.Ed.2d —— (1976) (44 L.W. 5294 decided July 6, 1976) in which the warrantless inventory search of the vehicle was approved. Chief Justice Burger, writing for the Court, said:

This Court has traditionally drawn a distinction between automobiles and homes or offices in relation to the Fourth Amendment. Although automobiles are "effects" and thus within the reach of the Fourth Amendment, *Cady v. Dombrowski,* 413 U.S. 433, 439 [93 S.Ct. 2523, 37 L.Ed.2d 706] (1973), warrant-

CLARK, Circuit Judge:

I concur in the result reached in Part I of Judge Ainsworth's dissent. In my view, the attachment of the electronic signal device to this vehicle was not a search. The capture of its signal was not an unreasonable seizure proscribed by the Fourth Amendment. I would reverse without reaching any issue of standing to challenge this procedure—Parts II and IV. I concur

without reservation in the remainder of the dissent. *See United States v. Frazier*, 8 Cir., 1976, 538 F.2d 1322, decided July 16, 1976, concurring opinion of Ross, J., at 1325.

less examinations of automobiles have been upheld in circumstances in which a search of a home or office would not. *Cardwell v. Lewis*, 417 U.S. 583, 589 [94 S.Ct. 2464, 41 L.Ed.2d 325] (1974); *Cady v. Dombrowski*, 413 U.S., at 439–440 [93 S.Ct. 2523]; *Chambers v. Maroney*, 399 U.S. 42, 48 [90 S.Ct. 1975, 26 L.Ed.2d 419] (1970).

The reason for this well-settled distinction is twofold. First, the inherent mobility of automobiles creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible. *Carroll v. United States*, 267 U.S. 132, 153–154 [45 S.Ct. 280, 69 L.Ed. 543] (1925); *Coolidge v. New Hampshire*, 403 U.S. 443, 459–460 [91 S.Ct. 2022, 29 L.Ed.2d 564] (1971). But the Court has also upheld warrantless searches where no immediate danger was presented that the car would be removed from the jurisdiction. *Chambers v. Maroney*, 399 U.S., at 51–52 [90 S.Ct. 1975]; *Cooper v. California*, 386 U.S. 58 [87 S.Ct. 788, 17 L.Ed.2d 730] (1967). Besides the element of mobility, less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office. In discharging their varied responsibilities for ensuring the public safety, law enforcement officials are necessarily brought into frequent contact with automobiles. Most of this contact is distinctly noncriminal in nature. *Cady v. Dombrowski, supra,* 413 U.S. at 442, 93 S.Ct. 2523. Automobiles, unlike homes, are subjected to pervasive and continuing governmental regulation and con-

trols, including periodic inspection and licensing requirements. As an everyday occurrence, police stop and examine vehicles when license plates or inspection stickers have expired, or if other violations, such as exhaust fumes or excessive noise, are noted, or if headlights or other safety equipment are not in proper working order.

The expectation of privacy as to autos is further diminished by the obviously public nature of automobile travel. Only two Terms ago, the Court noted:

'One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. It travels public thoroughfares where both its occupants and its contents are in plain view.' *Cardwell v. Lewis*, 417 U.S. 583, at 590 [94 S.Ct. 2464, 41 L.Ed.2d 325].

(Footnote omitted.) *Id.,* —— U.S. at ——, 96 S.Ct. at 3095.

Since the above dissent was written, Judge Simpson has called to our attention another District Court opinion involving use of a beeper, and supporting his views in this regard, entitled *United States v. Bobisink*, D.C.Mass., 1976, 415 F.Supp. 1334, decided June 28, 1976 (Tauro, D. J.).

The Government has also cited another recent decision pertaining to the use of a beeper by attachment of the device to defendant's automobile, which decision is in point and supports the views we have expressed in this dissent. *See United States v. Frazier*, 8 Cir., 1976, 538 F.2d 1322, decided July 16, 1976.