UNITED STATES of America, Appellant,

v.

John D. FRAZIER, Appellee.

No. 76–1297.

United States Court of Appeals,
Eighth Circuit.

Submitted June 15, 1976.

Decided July 16, 1976.

Rehearing and Rehearing En Banc
Denied Aug. 27, 1976.

Richard E. Coughlin, Asst. U. S. Atty. (argued), Barry A. Short, U. S. Atty., St. Louis, Mo., on brief, for appellant.

Leonard J. Frankel (argued), Clayton, Mo., on brief, for appellee.

Before HEANEY, ROSS and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

The sole issue raised in this appeal is whether the district court[1] erred in partially sustaining appellee's motion to suppress the introduction into evidence of certain articles obtained by the government as a result of the attachment of a tracking device to appellee's automobile. We conclude that the government's action did not consti-

1. The Honorable James H. Meredith, Chief Judge, United States District Court for the Eastern District of Missouri.

tute an illegal intrusion violative of the Fourth Amendment. Accordingly, we reverse.

On November 24, 1975, Mr. James Clayton, a supervisor for McDonnell Douglas Corporation, received an anonymous telephone call from a person suggesting an undescribed opportunity for Clayton to earn $50,000. Clayton reported the call to the FBI, which immediately began an espionage investigation, since Clayton's position with McDonnell Douglas involved the handling of classified documents. Subsequently, Clayton received similar calls, which frequently were recorded by the FBI, and on November 25, 1975, the caller disclosed an extortion scheme designed to obtain money from a wealthy, but unidentified, resident of Ladue, Missouri. More specifically, an explosive belt was to be attached to the victim with the removal of the belt contingent upon the payment of a significant sum of money.

On November 30, 1975, the caller was initially identified as appellee John D. Frazier through his automobile license number when he was observed at the Sheraton Airport Motor Inn. Stephen Kettner, a special agent for the FBI, then informed Clayton of Frazier's identity, and Clayton realized for the first time that he knew the suspect. Clayton described Frazier as a retired naval officer who was an explosives expert. On December 1, 1975, at approximately 2:00 p. m. the FBI first became aware of the name and address of the intended victim of the extortion plan, Clarence Barksdale, president of the First National Bank in St. Louis. This occurred during yet another telephone call placed by Frazier to Clayton. As a result of this call, the agents also learned that the extortion attempt would be made the next day. Shortly afterward, between 4:30 and 5:00 p. m. on December 1,

1975, the various FBI agents who were involved in the investigation convened for a conference to decide what course of action should be taken. At this conference it was concluded that a "bumper beeper" should be installed on Frazier's automobile in order to monitor his movements.[2]

On December 1, 1975, at approximately 6:30 p. m. Warren Wyman, another special agent for the FBI, attached the "bumper beeper" to Frazier's 1972 green Thunderbird while it was located in a public parking lot at the Sheraton Inn. No application for a search warrant was prepared or submitted to a magistrate prior to the utilization of the device.

During the course of the extortion attempt on December 2, 1975, the FBI agents learned that the extortion money was supposed to be delivered to the upper deck parking lot at Lambert International Airport. Although the agents planned to make an arrest when the money was to be picked up, no pickup attempt was made. Following an additional FBI conference at the airport, two of the agents proceeded to prepare an arrest warrant for Frazier while other agents were under instructions to arrest Frazier as soon as he could be found. Special Agent William Ahler conducted a search for Frazier by helicopter and through the use of the "bumper beeper" eventually located Frazier and accomplished his arrest in O'Fallon, Missouri, at approximately 3:30 p. m. on December 2, 1975.

Immediately following Frazier's arrest the agents, by search of his person, obtained from his possession two business cards containing the name and address of Clarence Barksdale and a page of the telephone book bearing the name of James Clayton.[3] Appellee was indicted on December 11, 1975, for the attempted extortion of the First National Bank in St. Louis. Prior to

2. The "bumper beeper," a battery-operated device, emits periodic signals which can be picked up on a radio frequency. These signals can establish the approximate location of the object to which the beeper is attached by providing a line of position, to the left or to the right, between the transmitter and the intercepting equipment.

3. Appellee's automobile and residence were also searched following his arrest and some additional items were seized. The search of the automobile and the home were conducted with the appellee's and his wife's consent, and the propriety of the seizure of these additional items is not at issue in this appeal.

trial, appellee filed a motion to suppress all evidence obtained by the government as a result of the installation of the electronic tracking device. The district court after a hearing on the motion held that the evidence obtained from Frazier's automobile and residence need not be suppressed because of the voluntary consent given by appellee and his wife to the searches. The trial court found there was probable cause to arrest appellee without a warrant. However, because the arrest was expedited through the use of the "bumper beeper" attached to appellee's car, the court sustained the motion to suppress the evidence taken from appellee's personal possession without his consent. The district court concluded that the installation of the "bumper beeper" without a warrant constituted an illegal search. *See United States v. Holmes*, 521 F.2d 859 (5th Cir. 1975), *rehearing en banc granted*, 525 F.2d 1364 (January 5, 1976).

In this appeal the government contends that the district court erred in suppressing the evidence taken from appellee's immediate possession. Essentially, the government asserts that the installation of the "bumper beeper" tracking device does not constitute a search within the ambit of the Fourth Amendment. *See United States v. Carpenter*, 403 F.Supp. 361, 364–65 (D.Mass. 1975). Secondarily, assuming the existence of a search, the government regards the intrusion to have been justified by either probable cause or exigent circumstances or both. In contrast, appellee contends that the use of the electronic "bumper beeper" is a search which was unreasonable under the circumstances of the instant case. *See United States v. Martyniuk*, 395 F.Supp. 42, 44–45 (D.Or.1975).

Whether the installation of an electronic tracking device on a motor vehicle is a search or seizure within the protection of the Fourth Amendment is a difficult question. At a minimum, the attachment of such a device, without consent or judicial authorization, is an actual trespass. Although only a limited intrusion, it is one which raises a concern that the government could plant a tracking device on a person's car and follow its movements whenever and wherever it is being driven. *See United States v. Martyniuk, supra*, 395 F.Supp. at 44–45. In contrast, it is at least questionable whether a person has a reasonable expectation of privacy with regard to his movements on public roads. *See Cardwell v. Lewis*, 417 U.S. 583, 588–92, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974); *United States v. Carpenter, supra*, 403 F.Supp. at 364–65. *Cf. Katz v. United States*, 389 U.S. 347, 350–59, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). In any event, the issue need not be resolved in this appeal since we are convinced the intrusion committed in the instant case, assuming arguendo that it is a search or seizure within the ambit of the Fourth Amendment, was justified by probable cause and exigent circumstances.

■ The search of a motor vehicle, especially its exterior, is less intrusive and implicates a lesser expectation of privacy than otherwise applies under the general warrant requirement. *See Cardwell v. Lewis*, 417 U.S. 583, 589–91, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974); *Almeida-Sanchez v. United States*, 413 U.S. 266, 279, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973) (Powell, J., concurring). If there is probable cause, an automobile, because of its mobility, may be searched without a warrant in circumstances that would not justify a warrantless search of a house or office. *Chambers v. Maroney*, 399 U.S. 42, 48–51, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States*, 267 U.S. 132, 158–59, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *United States v. Brown*, 424 F.2d 535, No. 75–1863 (8th Cir. 1976). Probable cause exists when the facts and circumstances within a police officer's knowledge would " 'warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1948), *quoting from Carroll v. United States*, 267 U.S. 132, 167, 45 S.Ct. 280, 65 L.Ed. 543 (1925).

■ The FBI agents in the instant case were conducting an investigation of an on-

going extortion scheme. On November 25, 1975, through a telephone call placed to James Clayton, the agents learned that an unidentified person intended to place an explosive belt on a wealthy individual with its removal contingent upon payment of a sum of money. Further, on November 30, 1975, the agents identified the telephone caller as John Frazier when he was seen at the Sheraton Airport Motor Inn. It is, of course, notable that James Clayton described Frazier as an expert with explosives. This factual basis, obtained through telephone calls placed to James Clayton, was sufficient to provide the FBI with probable cause for the installation of the tracking device on the bumper of appellee's automobile located in the public parking lot at the Sheraton Inn. *See Chambers v. Maroney, supra,* 399 U.S. at 48–51, 90 S.Ct. 1975. *Terry v. Ohio,* 392 U.S. 1, 20–27, 88 S.Ct. 1868, 20. L.Ed.2d 889 (1968); *United States v. Powers,* 439 F.2d 373, 375–76 (4th Cir. 1971). *Cf. Coolidge v. New Hampshire,* 403 U.S. 443, 458–64, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (car parked on private property).

These same facts also suggest the existence of exigent circumstances justifying the limited intrusion conducted in the instant case. *See Warden v. Hayden,* 387 U.S. 294, 298–300, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *United States v. Weaklem,* 517 F.2d 70, 72 (9th Cir. 1975); *Virgin Islands v. Gereau,* 502 F.2d 914, 928–29 (3d Cir. 1974). The tracking device was attached to appellee's automobile at approximately 6:30 p. m. on December 1, 1975. Although the FBI investigation was initiated as early as November 24, 1975, and the general nature of the extortion scheme was known on November 25, the agents did not identify Frazier until November 30. Even then, it was suspected that Frazier was acting in concert with other unknown individuals.

In addition, the particular nature of the extortion scheme planned in the instant case accentuates the exigency of the circumstances surrounding the FBI investiga-

tion. The extortion plan endangered the life of an unknown individual who was not identified as Clarence Barksdale until approximately 2:00 p. m. on December 1, 1975. Simultaneously, it was learned that the plan was intended to be executed on the following morning. Only a few hours later, between 4:30 and 5:00 p. m., the many FBI agents who were involved in various aspects of the investigation held a conference to decide on a course of action. It was shortly afterward, at approximately 6:30 p. m. on December 1, that the "bumper beeper" was attached. We believe the need to insure the safety of Clarence Barksdale, the concomitant requirement for constant surveillance of the appellee, and the limited time frame within which the FBI agents were operating provided sufficient exigent circumstances for the attachment of the tracking device in the instant case.[4] "The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others." *Warden v. Hayden, supra,* 387 U.S. at 298–99, 87 S.Ct. at 1646.

██ Appellee contends that probable cause to search the car existed for some time prior to the attachment of the "bumper beeper" and that, therefore, there were no exigent circumstances. Even assuming that probable cause previously existed, it has been recognized that the reasonableness of searching or seizing an automobile under exigent circumstances is not "foreclosed if a warrant was not obtained at the first practicable moment." *Cardwell v. Lewis, supra,* 417 U.S. at 595, 94 S.Ct. at 2472.

In summary, the governmental attachment of the tracking device in the instant case constituted a relatively minimal invasion of privacy which was reasonable under the circumstances.

Reversed.

ROSS, Circuit Judge (concurring).

I agree with the result reached by Judge Stephenson, and if the issue of whether the

---

4. Parenthetically, it should be noted that, even if the agents had obtained a search warrant, they would not have been able to serve the warrant without hindering the investigation.

installation of a "beeper" constitutes a search is not to be reached, I concur in what he has written. However the court, in my opinion, should squarely meet the issue: whether the installation of the tracking device was a "search" under the fourth amendment. This issue is an important and recurring one[1] and this disposition would give needed direction to the district courts, prosecutors and law enforcement authorities within the Circuit. I would hold that the use of the "beeper" was not a "search" within the meaning of the fourth amendment.

The basic inquiry in this case concerns the effect of the intrusion on the defendant's right of privacy. As Mr. Justice Blackmun has stated, " * * * insofar as Fourth Amendment protection extends to a motor vehicle, it is the right to privacy that is the touchstone of our inquiry." *Cardwell v. Lewis,* 417 U.S. 583, 591, 94 S.Ct. 2464, 2470, 41 L.Ed.2d 325 (1974) (plurality opinion).

The intrusion on defendant's right of privacy in this case, if any can be said to exist, was decidedly abstract and theoretical. No invasion of the interior of the car occurred. The "beeper" did not permit the agents to "enter" the car's interior and search or seize anything therein—either intangible or tangible. The sole purpose of the "beeper" was to permit the agents to surveil the location of the defendant's automobile. The intrusion on defendant's privacy was no greater here than an intrusion created by manual, visual surveillance of the car's location, which is clearly permissible irrespective of fourth amendment considerations.

Two courts have held that the use of a tracking device is a "search" within the meaning of the fourth amendment. *See United States v. Holmes,* 521 F.2d 859 (5th Cir. 1975), *rehearing en banc granted,* 525 F.2d 1364 (January 5, 1976); *United States v. Martyniuk,* 395 F.Supp. 42 (D.Or.1975). Both cases rely heavily on *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). In *Katz,* government

agents attached an electronic listening and recording device to the outside of a public telephone booth from which petitioner placed incriminating phone calls. The Court held that the eavesdropping was an invasion of the petitioner's privacy upon which he justifiably relied and, notwithstanding the absence of physical penetration into the enclosed phone booth, constituted an unreasonable "search and seizure" within the meaning of the fourth amendment.

In my view, the *Katz* case is clearly distinguishable. There, the invasion of privacy was substantial because the government was surveilling private conversations. In this case, the government used the "beeper" to surveil only the location of the defendant's automobile. *Katz* itself admonishes us that "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz v. United States, id.,* 389 U.S. at 351, 88 S.Ct. at 511.

In *Cardwell v. Lewis, supra,* 417 U.S. at 588–592, 94 S.Ct. 2464, a plurality of the Court concluded that the warrantless examination of the exterior of an automobile parked in a public parking lot invaded no privacy right. The examination revealed incriminating paint scrapings and tire treads. Mr. Justice Blackmun, writing for the plurality, noted that the evidence derived from the warrantless examination of the car's exterior was " * * * not the product of a 'search' that implicates traditional considerations of the owner's privacy interest." *Id.* at 588–589, 94 S.Ct. at 2468.

I comprehend no meaningful difference between the invasion of the defendant's privacy in this case and the invasion in *Cardwell.* That the objective of surveilling the location of defendant's automobile was accomplished by electronic means does not enlarge any expectation of privacy. The use of an electronic device is no talisman for invoking fourth amendment protections. *United States v. Carpenter,* 403 F.Supp. 361, 364 (D.Mass.1975).

1. The Fifth Circuit has recently heard arguments on this issue by the court en banc. *United States v. Holmes,* 525 F.2d 1364 (5th Cir. 1976).

For the reasons enumerated above, I agree that the order suppressing the evidence obtained as a result of the use of the "beeper" must be reversed.