**UNITED STATES of America**

v.

**Brock BOBISINK**

and

**Frederick Moore.**

No. 75-454-T.

United States District Court,
D. Massachusetts.

June 28, 1976.

James N. Gabriel, U. S. Atty., James E. O'Neil, Asst. U. S. Atty., Boston, Mass., for the Government.

Evan T. Lawson, Boston, Mass., for Bobisink and Moore.

James M. Pool, Boston, Mass., for Searles.

## OPINION

TAURO, District Judge.

Defendants Brock Bobisink and Frederick Moore, along with a third co-defendant,[1] are charged in a four-count indictment with conspiring to manufacture a controlled substance, manufacturing a controlled substance, conspiring to distribute a controlled substance and possession with intent to distribute a controlled substance. 21 U.S.C. §§ 841(a)(1) and 846, and 18 U.S.C. § 2.

Before this court is the consolidated motion of defendants Bobisink and Moore to suppress the fruits of two allegedly illegal searches conducted by officers of the Drug Enforcement Administration (DEA) on May 7 and May 8, 1975.

These searches were carried out with the authorization of judicially obtained warrants. But, the evidence presented to the

Magistrate, and relied on by him in his finding of probable cause, was obtained by the use of electronic signaling devices, placed on defendants' vehicles and property without the authority of a warrant.

Defendants have moved to suppress all evidence seized and all statements taken incident to, and as a result of, the May 7 and 8 searches. The core of this motion is the allegation that the placement by DEA agents of electronic signaling devices ("beepers") on vehicles driven by the defendants, and in a carton purchased by the defendants, constituted a search and seizure within the meaning of the Fourth Amendment. As such, defendants argue that, before affixing or planting these devices, the agents were required under the Constitution to seek and obtain a warrant, giving them permission to use such devices. Since the Government concedes that the agents did not do this, defendants say the evidence unearthed through the use of these beepers must be suppressed. This court agrees with the defendants and grants the motion to suppress.

### I.

No substantial disagreement about the facts of this case appears to exist. On March 26, 1975, DEA Special Agent Elliot was informed by the manager of Doe & Ingalls Chemical Company in Medford, Massachusetts that one Frederick Moore, purporting to represent Plastico, of 26 Allston Street, Allston, Massachusetts, had placed an order for substantial amounts of various chemicals, all ingredients and precursors of phencyclidine, a controlled substance. The agent initiated an investigation the same day which determined that the alleged business address of Plastico was an apartment house. The agent also confirmed that neither Moore nor Plastico was licensed to manufacture a controlled substance.

On April 11, 1975, at the Doe & Ingalls Chemical Company, Agent Elliot observed

---

1. The third defendant, Stephen D. Searles, has not filed a motion to suppress. His motion to sever his case from that of the other two de-fendants was allowed by this court on February 20, 1976.

another DEA agent place, with the consent of Doe & Ingalls, a beeper inside a package of chemicals ordered by Moore on March 26, and to be picked up by him on April 14.

On April 14, Agent Elliot observed defendants Moore and Bobisink in a yellow U–Haul van in a public parking area near Doe & Ingalls Chemical Company. At an opportune moment, Agent Elliot attached a beeper to the undercarriage of the van while it was parked in that area. The agent then observed Bobisink and Moore pick up the packages ordered from the company, including the package with the first beeper inside, place these packages in the van and drive off. Agent Elliot along with other DEA agents tailed the van using visual surveillance reinforced and verified by the signals emanating from the two beepers in and on the van.

The agents followed the van from Medford down to Route 6 on Cape Cod, using the beepers approximately 50% of the time to keep track of the defendants. At some point, apparently while the agents were relying on the beeper signal, the van turned off Route 6. Presumably, this turn affected the agents' reception, as they were unable to pick up the beeper signals. A short time after the interruption of the signal, the agents saw the van on Route 124 crossing over Route 6. They quickly exited from Route 6 and proceeded down Route 124 until, after roughly a mile, they saw the van parked in front of a house in Brewster, Massachusetts. From the time the defendants left Route 6 until their van was spotted in front of the house, the agents did not pick up the beeper signal.

From April 14 to April 29, 1975 the agents maintained intermittent surveillance over the Brewster house, using signals from the beeper planted in the chemical carton to confirm the location and continued presence of the chemicals within the house.

On April 29, DEA agents again observed Moore and Bobisink at the Doe & Ingalls

Chemical Company where they purchased a five-gallon can of piperdine, a necessary component for the manufacture of phencyclidine. The agents placed a third beeper on the 1966 Mustang these defendants were driving on that day and followed them from Medford down to the Brewster house.[2]

On the night of April 29, agents observing the Brewster premises detected a strong odor of ether coming from the house and noticed the house being cross-ventilated by opening of doors. At that time the beeper device confirmed that the box of chemicals purchased by Moore and Bobisink on April 14 was still in the house.

On the basis of these facts the agents applied for a warrant to search the Brewster premises and on May 2 the warrant was obtained. On May 7, the warrant was executed and a large amount of potentially incriminating evidence found. Based on the May 7 search and on observations of various suitcases and boxes being transferred from the Brewster house to the apartment in Allston, originally described as the location of Plastico, a warrant was obtained to search the Allston premises. This warrant was executed on May 8 and, again, a large quantity of potentially incriminating material was uncovered.

It has been stipulated that at all relevant times defendants Moore and Bobisink were co-tenants of both the Brewster and Allston premises.

## II.

Two issues are presented in this case. The first is whether the use of these beepers was so related to the subsequent searches as to warrant Fourth Amendment inquiry. Assuming such inquiry is warranted, the second issue is whether defendants' Fourth Amendment rights were violated by the use of these beepers.

█ As to the first issue, the Government argues that the beepers were not "the

---

2. These agents did not testify at the motion to suppress. Although Agent Elliot did not participate in this surveillance, he testified that he assumed the agents involved made use of the beeper placed on the Mustang to stay out of sight without losing track of the defendants.

*sine qua non* of the surveillance of defendants' activities." Government's Memorandum, at 4. The government theorizes that (a) *visual* surveillance of the van on the drive from Medford to Brewster was maintained "the majority of the time"; (b) the beeper was used only to confirm the defendants' presence on the road and to enable the agents to keep out of sight; and (c) at a critical stage of the journey—the intersection of Route 6 and Route 124—the agents lost the electronic signal as well as visual contact with the van and only relocated the defendants by use of a visual search without use of the beeper. The Government notes that in the two existing cases which have found that implacement of a beeper did constitute a search under the Fourth Amendment, the agents were virtually dependent on the beepers to locate the defendants. *United States v. Holmes*, 521 F.2d 859 (5th Cir. 1975), aff'd in part and rev'd in part per curiam (*en banc*) 537 F.2d 227 (5th Cir., Aug. 20, 1976); *United States v. Martyniuk*, 395 F.Supp. 42 (D.Or. 1975).

This court finds that the agents could have conducted their investigation by an exclusively visual surveillance. They simply chose not to. Further, this court finds that the beepers were essential to this investigation since, as choreographed by the agents, its success depended on both visual and electronic surveillance.

The trip from Medford to Brewster took some ninety minutes. There is no evidence that the agents had any idea where the defendants were headed when they left Doe & Ingalls. For at least half of this trip the beepers were used to maintain the tail on the defendants. During the trip, the defendants might have turned off Route 6. Without the beepers' electronic signals, the agents would have been unaware of the change in defendants' course, unless it happened to occur during the fifty percent of the time they had visual contact. Indeed, the defendants were only a mile from their destination when the agents lost the electronic signal, presumably because the van

turned off the road. The fact that, through fortuitous circumstances, the agents eyeballed the van a short time later does not diminish the significance of the electronic signal to the success of the surveillance. But for the beepers, and the fact that their signal stopped, the agents would probably have been unaware of the defendants' change of direction and would not have been alerted to establish visual contact with the van.

Even after the trip, the beeper signal from the carton was of continuing value in establishing a basis for the subsequent searches, confirming that the chemical brought from Doe & Ingalls remained on the Brewster premises. In addition, the testifying agent inferred that the beeper on the 1966 Mustang enabled the agents to track the final chemical, the piperdine, from Doe & Ingalls to the Brewster house on April 29. These facts, plus the aromas emanating from the premises, caused the agents to conclude that the Brewster house was indeed the manufacturing site, and provided a probable cause basis for issuance of the search warrant. Thus the beepers were critical to the investigation in two ways: 1) they permitted the DEA agents to trail the defendants so as to locate the drug manufacturing site, and 2) they permitted the agents to keep track of the chemicals which they anticipated would eventually go into the manufacturing process. Certainly, such data was significant in providing the basis for the issuance of the search warrants in this case. The court concludes, therefore, that the use of the beepers was sufficiently related to the subsequent searches so as to warrant Fourth Amendment inquiry.

### III.

The court holds that the placement of the beepers under the circumstances of this case was a search and seizure under the Fourth Amendment requiring issuance of a search warrant.

The seminal case in this area is, of course, *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). In that case

agents of the Federal Bureau of Investigation, without obtaining a warrant, placed an electronic listening device on a phone booth from which the defendant later made phone calls. These recordings of defendant's conversations were introduced at trial. In finding that such an intrusion violated the defendant's Fourth Amendment rights, the Court rejected the Government's argument that the glass-enclosed phone booth was not a "constitutionally protected area."

> For the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. See *Lewis v. United States,* 385 U.S. 206, 210 [87 S.Ct. 424, 427, 17 L.Ed.2d 312]; *United States v. Lee,* 274 U.S. 559, 563 [47 S.Ct. 746, 748, 71 L.Ed. 1202]. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected. *Rios v. United States,* 364 U.S. 253 [80 S.Ct. 1431, 4 L.Ed.2d 1688]; *Ex Parte Jackson,* 96 U.S. [6 Otto] 727, 733 [24 L.Ed. 877].

389 U.S. at 352, 88 S.Ct. at 511.

In disposing of the Government's attempt to justify the recording by invocation of the "trespass" doctrine, the Court concluded:

> The Government's activities in electronically listening to and recording the petitioner's words violated the privacy upon which he justifiably relied while using the telephone booth and thus constituted a 'search and seizure' within the meaning of the Fourth Amendment. The fact that the electronic device employed to

achieve that end did not happen to penetrate the wall of the booth can have no constitutional significance.

*Id.,* at 353,[3] 88 S.Ct. at 512.

The principles enunciated in *Katz* control the facts of the instant case. The mandates of the Fourth Amendment must be met before beepers such as these may be employed as they were to trace or confirm the whereabouts of persons or their belongings.

▆ Initially it should be noted that, insofar as it is relevant,[4] the kinds of areas involved here do come under the umbrella of the Fourth Amendment. Absent special circumstances, a person's automobile is not subject to a warrantless search. This court holds that the same is true of property purchased by an individual. A citizen is entitled to assume that property he buys does not contain an electronic spy.[5]

The Government does not contest that the physical areas involved are protected from warrantless searches. It does contend, however, that the intrusion here does not come up to the level of a "search" under the Fourth Amendment. Again, this court does not agree.

In support of its position the Government makes much of the fact that the beeper neither records nor transmits conversation. Unlike the "unwanted ear" condemned in *Katz* the beeper does not have the effect of an indiscriminate dragnet, pulling in all information relevant or irrelevant to the investigation. *See Berger v. New York,* 388 U.S. 41, 65, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1965) (Douglas concurring).[6] *But see Unit-*

---

**3.** Although the fact no longer has any essential legal significance, it is noteworthy that the intrusion in this case was accomplished by a technical trespass against the defendants' property, when the agent reached up into the undercarriage to plant the beeper.

**4.** Although the majority opinion does state that the Fourth Amendment protects persons not places, the place or area involved may determine whether the person has a reasonable expectation of privacy. *United States v. Katz, supra,* 389 U.S. at 360–61, 88 S.Ct. 507 (Harlan, J., concurring).

**5.** This holding is not altered by the fact that Doe & Ingalls gave its permission to place the beeper in the package. They cannot waive the purchaser's Fourth Amendment rights, any more than the telephone company could have sanctioned the installation of the recording device in *Katz.*

**6.** A beeper on the other hand *is* as indiscriminate as its nature permits. Once placed on a vehicle, it permits agents to trace the private movements of any person who happens to ride in it, regardless of his relation to the primary investigation.

ed States v. Carpenter, 403 F.Supp. 361, 364–65 (D.Mass.1975).

■ The Government's argument assumes, wrongly, that Fourth Amendment inquiry may only be directed at those monitoring devices which intrude on conversations.[7] The test, as noted, is whether the Government's activity violates an individual's reasonable expectation of privacy. *Katz v. United States, supra,* 389 U.S. at 360, 88 S.Ct. 507 (Harlan, J., concurring); *U. S. v. Cruz Pagan,* 537 F.2d 554 (1st Cir. 1976); *Ouimette v. Howard,* 468 F.2d 1363, 1365 (1st Cir. 1972).[8] Surely a person's movements constitute an area where he should be able to have some expectation of privacy. True, when an individual gets into his car and drives away he can anticipate that he might be observed by someone following him. But it is something else entirely to have one's whereabouts monitored continuously by an undisclosed bug. Similarly, the placement of a signaling device upon one's possessions, to permit the Government to confirm their whereabouts intermittently, goes far beyond any ordinary powers of observation about which citizens are reasonably put on notice.

There is nothing in the nature of these beepers which limits their use to automobiles and large packages. Presumably, no technological problem prevents agents from placing such devices on, for example, a person's clothing. Thus, an individual could be traced on a moment to moment basis as he went about his daily activities. It offends common sense to suggest that such a continuous electronic surveillance would not violate any reasonable expectation of privacy. To allow such indiscriminate monitoring could conceivably be the prelude to sanctioning a "1984" network of such beepers connected to a master monitoring station which would keep track of each of our movements for the benefit of the powers that be. Certainly the average, reasonable citizen, with his reasonable expectation of privacy, would take little solace in the fact that, while his every movement was recorded, his conversations were not.

The fact that the surveillance in this case might have been accomplished by government agents following closely behind the defendants—or, if this would have raised suspicions, by teams of agents in different cars—does not signify that the accomplishment of the same purpose by a planted electronic beacon lies outside the sphere of the Fourth Amendment.

Indeed, such fact, if anything, argues against any finding of exigent circumstances that might excuse the failure to seek a warrant.

It is important to understand that this court's decision does not deny the use of these beepers to the Government. It merely requires that the judgment about the proper balance between the rights of the individual and of the Government be made by a neutral magistrate and not left to law enforcement officers alone.

> When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent.

*Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

■ The Government asserts that the use of the beepers in this case was limited and that, balancing the minimal use of the devices with the other grounds supporting the issuance of the warrant to search the Brewster house, the evidence uncovered should not be suppressed. Virtually the same argument was made and rejected in *Katz,*

---

7. For example, a recent Supreme Court decision suggests, without specifically holding, that the propriety of using a pen register, which notes the frequency and destination of telephone calls without actually recording their contents, may well depend on the satisfaction of Fourth Amendment safeguards. *United*

States v. Giordano, 416 U.S. 505, at 555, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1975). (Powell, J., dissenting).

8. *See also United States v. Santana,* —— U.S. ——, 96 S.Ct. 2406, 2408, 49 L.Ed.2d 300, 44 L.W. 4970, 4971 (1976).

**1340**

*supra,* 389 U.S. at 356–59, 88 S.Ct. 507. Moreover, this court has found that the beepers were essential to the success of the surveillances and that the information gained therefrom was the backbone of the data submitted for the issuance of the search warrants. Tied as it was to the ultimate searches, employment of the beepers in this case constituted a search within the meaning of the Fourth Amendment. The Government has not suggested that any exceptions to the warrant rule obtain. The placement of these beepers, therefore, was unreasonable *per se* and the fruits of these searches must be suppressed. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Defendants' motion is allowed. An order will issue.