STATE OF NORTH CAROLINA v. RODNEY E. HENDRICKS

No. 7915SC358

(Filed 16 October 1979)

1. **Searches and Seizures §§ 4, 23— use of beeper as search—reasonableness— warrant issued by federal magistrate**

   The State, by monitoring an electric homing device commonly called a "beeper" placed in a container of a substance lawfully owned but known to be a precursor chemical used in the illegal manufacture of methamphetamine, a controlled substance, conducted a "search" under the Fourth Amendment of the U. S. Constitution, but such search was not unreasonable, though officials continued to monitor the beeper when the container and the device were carried by a third party suspected of criminal activity from Connecticut to N. C. and finally into defendant's home, since a federal magistrate approved the initial warrant for the installation of the beeper, and the validity of that warrant was not challenged other than by the general assertion that defendant's Fourth Amendment rights had been violated.

2. **Searches and Seizures § 4— electronic beeper in automobile—search**

   Though an individual's expectation of privacy with regard to movement in an automobile is less than that, for example, which he would have in his home, automobiles are not devoid of Fourth Amendment protection; consequently, the installation and monitoring of a beeper located in or on a motor vehicle constitutes a Fourth Amendment search.

3. **Searches and Seizures §§ 28, 29— use of electronic beeper—search warrant—showing required—scope of warrant**

   Where electronic beepers are involved, a search warrant should be based upon facts sufficient to show probable cause and particularity, and these requirements will be met if the following facts are shown: (1) that a crime has been, is being or is about to be committed; (2) that tracking of the persons or property specified in the application is likely to reveal evidence of the crime, or the location of the criminals; (3) that the persons or property to be tracked are directly involved in the crime; (4) that alternative methods of investigations are likely to be burdensome or ineffective; (5) that existing exigent circumstances justify withholding notice of the search; and (6) that the persons or property to be traced are sufficiently identified. Similarly, the order issued by the magistrate should be no more intrusive than is necessary and should insure: (1) that the purpose of the search is narrowly defined; (2) that the identity of the object on which and the method by which the beeper is attached are

articulated; (3) that the time period during which the search may be conducted is limited; (4) that the conditions requiring termination of the search in advance of the specified time limit are stated; (5) that a return report on search activities will be submitted; and (6) that subsequent notice to the parties searched will be provided.

**4. Searches and Seizures § 23— search of house—probable cause for issuance of warrant**

      Evidence obtained from an electronic beeper along with other statements in an officer's affidavit established sufficient probable cause to justify a warrant for the search of defendant's private residence where the affidavit revealed (1) statements by an informer concerning the existence of a clandestine laboratory operation, and such statements were made against his penal interest and were thereby inherently reliable; (2) the manner of purchase and the nature of the chemicals purchased was highly probative, since the chemicals were ordered in the name of a business, but university and residential addresses were given, and an individual drove 800 miles and paid $3000 in cash in order to purchase the 70 kg of chemicals, as opposed to paying by check and having the chemicals shipped; (3) that officers visually observed the person who picked up the chemicals and observed his furtive movements in transporting the chemicals to N. C.; (4) the person who picked up the chemicals went to defendant's home three times and thereafter left the cannister containing chemicals and an electronic beeper within defendant's curtilage; (5) the original informant, an admitted participant in an illegal methamphetamine laboratory, visited defendant's house; and (6) officers on several occasions observed someone in defendant's house wearing a white smock resembling a chemist's garb.

APPEAL by defendant from *McLelland* and *Martin, Judges.* Order denying Motion to suppress entered 11 December 1978. Judgment entered 8 January 1979 in Superior Court, ALAMANCE County. Heard in the Court of Appeals 22 August 1979.

By indictment proper in form defendant was charged with felonious possession of hashish and felonious possession of marijuana with intent to sell. Prior to trial, the defendant moved to suppress all controlled substances and any other tangible evidence seized pursuant to a search warrant from defendant's home on 12 June 1978. A pretrial hearing on the motion to suppress was denied by Judge McLelland. Thereafter, defendant appeared in open court and entered a plea of guilty of possession of hashish and misdemeanor possession of marijuana. Pursuant to G.S. 15A-979, he appealed from the judgment consolidating the two counts and imposing a sentence of three to five years, suspended upon payment of a $1,000 fine and probation for five years.

Other facts necessary to decision are cited in the opinion.

*Attorney General Edmisten by Assistant Attorney General James E. Magner, Jr., for the State.*

*Bircher & Connerat by Richard Bircher for defendant appellant.*

CLARK, Judge.

The substance of this case involves the Fourth Amendment implications of the use of electronic tracking devices, an issue of first impression in this State.

Defendant challenges the trial court's denial of its motion to suppress evidence on the grounds that the affidavit in support of the search warrant which was the sole authority for the search of defendant's home, was not sufficient to establish probable cause and that the search of the defendant's home was unreasonable and violated defendant's rights under the United States Constitution and applicable North Carolina law. After careful consideration, we find no merit in defendant's challenge to the trial judge's ruling on the motion to suppress.

Defendant generally asserts that his rights of privacy have been violated, although he does not specifically articulate the question of whether the electronic "beeper" has violated his rights. Nonetheless, the security and protection of persons and property provided by the Fourth Amendment are fundamental values. *Alderman v. United States*, 394 U.S. 165, 175, 89 S.Ct. 961, 967, 22 L.Ed. 2d 176, 187, *reh. denied*, 394 U.S. 939, 89 S.Ct. 1177, 22 L.Ed. 2d 475 (1969), which ". . . are to be regarded as of the very essence of constitutional liberty; and . . . the guaranty of them is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen, . . ." *Gouled v. United States*, 255 U.S. 298, 304, 41 S.Ct. 261, 263, 65 L.Ed. 647, 650 (1921). Consequently, the increasing use of electronic tracking devices by law enforcement agencies, the novelty of this question in North Carolina, and the potential for disrupting the privacy of those in the situation of defendant, compel us to give careful attention to the questions raised by the use of the electronic beeper in the instant case.

The search warrant *sub judice* was supported by the affidavit of Timothy L. Morgan, Special Agent for the Drug Enforcement Administration, which affidavit is herein summarized or quoted.

1. On 9 March 1978, John Nelson was arrested by the Chapel Hill Police Department on charges of possession of controlled substances. Nelson thereafter stated that he was a chemist in a clandestine drug laboratory which illegally manufactured methamphetamine, that the lab was temporarily out of operation due to the need for precursor chemicals and that upon the receipt of the new chemicals the lab would be moved to a new location where additional quantities of Controlled Substances would be manufactured. Nelson further advised the officers that he worked in the lab for William Douglas Johnson, to whom he had been introduced by James Guy Parks, Nelson's roommate.

2. On 2 June 1978, Special Agent Richard B. Broughton contacted Mr. Gene Huller, an official of Fisher Scientific Chemical Company in Raleigh, North Carolina. Mr. Huller advised Agent Broughton that his firm, on 27 July 1977, 2 February 1978, and 1 March 1978, had received orders from J. G. Parks, doing business as Southeastern Tank and Steel Service, Chapel Hill, North Carolina, for chemicals and supplies including methylamine, ethyl ether anhydrous, formic acid, sodium hydroxide, funnels, tube adapters, graduated cylinders, flasks, stirring rods, cork rings and rubber stoppers. Similarly, Mr. Huller also advised the officers that Mr. William Johnson, also doing business as Southeastern Tank and Steel Service, contacted Fisher Scientific Company on 27 January 1978 to order a flask, filter paper, rubber tubing, beakers, funnels, and connectors. All items ordered were either picked up by or delivered to Parks, Johnson or their designated recipients.

3. Similarly, Ms. Jose Roth, Office Manager of Pflatz and Bauer Chemical Company, Stamford, Connecticut, contacted Special Agent Timothy L. Morgan, Greensboro, North Carolina, on 23 May 1978, and informed the officer that J. G. Parks, doing business as Southeastern Tank and Steel Service, presented orders for benzelmethylketone, ethylbutylketone, and isopropyl benzene, the latter order of which was to be picked up by Mr. Parks on 31 May 1978.

4. On 30 May 1978, Special Agent T. W. Sprankle of the Hartford, Connecticut District Office of the Drug Enforcement Agency, appeared before U. S. Chief District Judge T. Emmett Clarie with an affidavit requesting the installation of a radio-tracking device in the container containing a quantity of the phenyl 2 proponone (benzelmethylketone). The warrant was issued.

5. "On the following day, 5/31/78, Mr. PARKS arrived at the PFALTZ AND BAUER CHEMICAL COMPANY, at which time he paid cash, $3,837.50 for the above items and received them. Surveillance was then conducted on PARKS and his vehicle, a 1977 Ford truck, North Carolina license BJ-6203, and the container containing the chemicals/radio-tracking device by surveilling DEA agents Sprankle, Joe Barett, Richard Keckler, Chris Bradley and other agents, [sic] PARKS was observed driving from the Stamford, Connecticut area to the Raleigh/Chapel Hill, North Carolina area on this date by the above officers and others. During the drive from Stamford, Connecticut on numerous occasions, PARKS was observed operating the vehicle in a very erratic manner. PARKS frequently would go through a toll booth, paying, and immediately pull over to the side, watching other vehicles come through. PARKS additionally was observed parking in rest areas and appearing to be watching other vehicles to see if they stopped along with him."

6. "On the following date of 6/1/78 PARKS was observed going to the residence of Rodney Eugene HENDRICKS, Route 2, Box 387A, Graham, North Carolina, [sic] PARKS was observed remaining in the Graham/Pittsboro, North Carolina area until 6/2/68 [sic] at which time he was observed by surveilling agents operating his above described vehicle; proceeding to the Boone/Todd, North Carolina area. Agents C. D. Holbrook, Chris Bradley as well as other agents monitored the signal from the container of Phenyl 2 Proponone and determined PARKS maintained possession of the container in the vehicle he operated at all times."

7. "On Tuesday, 6/6/78 surveilling agents and radio monitors observed PARKS return to Route 2, Box 387A, Graham, North Carolina. During the entire time, Agents observed PARKS to operate his vehicle in a very erratic manner. He made numerous u-turns and would frequently stop on the side of the road apparently watching for vehicles following him."

8. "On Wednesday, 6/7/78, PARKS was again observed at Route 2, Box 387A, Graham, North Carolina. However, during the early AM hours of Friday, 6/9/78 surveilling agents, I. L. Allcox and Robert H. Clark determined that PARKS' vehicle was no longer at the residence yet monitoring of the radio transmitter reflected the container had been removed from the vehicle and apparently placed in the residence or in adjacent out building on the property."

9. "On the evening of Friday, 6/10/78 Special Agents Clark and Allcox observed from a distance, through a side window of the house, an individual putting on a white smock, typical of that used by chemist [sic]. The Agents observed the individual putting on the smock on approximately five (5) different occasions as he walked from the front of the residence to the rear of the residence."

10. "On the evening of Saturday, 6/11/78, Special Agents Timothy L. Morgan and Robert H. Clark observed a vehicle (white panel GMC truck) known to be utilized by John NELSON, departing from the above residence. Additionally, surveilling Agent Larry Rawlings observed the operator of the above vehicle and it appeared to be John NELSON."

11. "On 6/2/78 Special Agent Richard B. Broughton advised DEA Forensic Chemist Ron Pyles and North Carolina State Bureau of Investigation Forensic Chemist Dr. Charles McDonald of the above lists of chemicals and equipment purchased by James G. PARKS and others doing business as SOUTHEASTERN TANK AND STEEL SERVICE. Both Chemists stated they knew of no way these chemicals and equipment could be used in cleaning or painting steel tanks. Both Chemists further stated that with the above chemicals the only product known to them which could be manufactured was the Schedule II Controlled Substance, Amphetamine."

12. "During the past seven (7) years, while employed as a Special Agent with the Drug Enforcement Administration, I have been directly involved in no less than ten clandestine laboratory investigations leading to the arrest and convictions of at least 40 defendants. It has been my experience through being involved in these investigations that the activities of James Guy PARKS and

others during the past three weeks is typical of persons being involved in clandestine laboratory operations."

## I.

### THE ELECTRONIC BEEPER AND DEFENDANT'S FOURTH AMENDMENT RIGHTS

[1]  The threshold question in this case is whether the State, by monitoring an electronic homing device commonly called a "beeper" placed in a container of a substance lawfully owned but known to be a precursor chemical used in the illegal manufacture of methamphetamine, a controlled substance, conducted an unreasonable search which violated defendant's rights under the Fourth Amendment of the United States Constitution and Article I, Section 20 of the North Carolina Constitution, when the canister and device were carried by a third party suspected of criminal activity, from Connecticut to North Carolina and finally into defendant's home. If, in fact, the monitoring of the beeper and its entry into defendant's home constituted an unlawful search, and if the subsequent warrant for the search of defendant's house were issued primarily on the basis of information obtained via the unlawful beeper, then the subsequent warrant may be invalid by application of the exclusionary rule, *Alderman v. United States*, 394 U.S. at 177, 89 S.Ct. at 968-69, 22 L.Ed. 2d at 189, or for want of sufficient probable cause to implicate defendant or his home.

The landmark case, *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081, *reh. denied*, 368 U.S. 871, 82 S.Ct. 23, 7 L.Ed. 2d 72 (1961), viewed the exclusionary rule as necessary to the existence of the Fourth Amendment guarantees against unreasonable searches and seizures. In *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed. 2d 726 (1963), it was held that the states still had the general power to determine what a reasonable search, seizure or arrest was, but the finding of reasonableness could be "respected only insofar as consistent with federal constitutional guarantees." 374 U.S. at 33, 83 S.Ct. at 1630, 10 L.Ed. 2d at 738. Though the language in the North Carolina Constitution (Article I, Sec. 20), providing in substance that any search or seizure must be "supported by evidence," is markedly different from that in the federal constitution, there is no variance between the search and seizure law of North Carolina and the re-

quirements of the Fourth Amendment as interpreted by the Supreme Court of the United States. *State v. Vestal,* 278 NC. 561, 577, 180 S.E. 2d 755, 766 (1971), *appeal after remand,* 283 N.C. 249, 195 S.E. 2d 297, *cert. denied,* 414 U.S. 874, 94 S.Ct. 157, 38 L.Ed. 2d 114 (1973). *See also* N. C. Gen. Stat. Ch. 15A, Subch. II. Consequently, even though we are also construing North Carolina law, we will confine our discussion to the application of the federal cases dealing with electronic tracking devices.

A "beeper," a "beacon" or a "transponder" is a "small radio transmitter that broadcasts a signal; it does not record any sounds or transmit conversations. The signal that the beeper emits can be monitored by directional finders, thereby enabling officers to determine the beeper's location." Carr, Electronic Beepers, 4 Search & Seizure L. Rep., No. 4 (April, 1977). *See generally,* Note, Tracking Devices and the Fourth Amendment, 13 U.S.F. L. Rev. 203 (1978); Note, Tracking *Katz:* Beepers, Privacy and the Fourth Amendment, 86 Yale L.J. 1461 (1977); Note, Fourth Amendment Implications of Electronic Tracking Devices, 46 U. Cin. L. Rev. 243 (1977); Note, Does Installation of an Electronic Tracking Device Constitute a Search Subject to the Fourth Amendment? 22 Vill. L. Rev. 1067 (1977); Bumper Beepers, 13 Crim. L. Bull. 266 (1977); Note, Electronic Tracking Devices and Privacy: See No Evil, Hear No Evil, But Beware of Trojan Horses, 9 Loy. Chi. L.J. 227 (1977).

Beepers are without the scope of the federal wiretap statute, 18 U.S.C. §§ 2510-2520 (1979), because they do not "intercept" the contents of any wire or aural communication. 18 U.S.C. § 2510(4). Consequently, if the installation of a beeper were held not to be a "search," no significant restrictions on this area of government surveillance would exist. No warrants would be required. We view this contingency with great concern.

"A beeper . . . *is* as indiscriminate as its nature permits. Once placed on a vehicle, it permits agents to trace the private movements of any person who happens to ride in it, regardless of his relation to the primary investigation." *United States v. Bobisink,* 415 F. Supp. 1334, 1338 (1976) at fn. 6, *aff'd sub nom. United States v. Moore,* 562 F. 2d 106 (1st Cir. 1977). In addition, we are apprehensive of the technological ease by which beepers might be affixed to one's clothing or personal effects. We stress

that the presence of a beeper on one's person, in one's personal effects, in one's vehicle, or in one's home, is not a minimal intrusion. The presence of a beeper, in effect, transforms private property into an instrument of surveillance, a surrogate police presence, a use unintended by the original owner. Moreover, the continuing presence of the beeper is not a mere technical trespass, but an extended physical intrusion: they continually broadcast the message, "Here I am." In sum, these "uninvited shadowers" pierce one's privacy of location and movement, as well as one's rights to protection of property against physical invasion.

The Fourth Amendment, however, only addresses "searches" and "seizures." Whether a "search" is involved is determined, not by whether a physical trespass under local property law has been effected, but rather, whether the person invoking the protection of the Fourth Amendment can claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by the State. *Katz v. United States,* 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed. 2d 576, 583 (1967). We hold that a "search" occurred when: (1) Parks purchased a canister containing a lawful substance with an electronic beacon installed therein; (2) when the radio-tracking device was used in monitoring the movements of Parks as he drove from Connecticut to North Carolina; (3) when Parks carried the canister and the beacon into defendant's home; and (4) while the beeper, once located within the defendant's curtilage, was continuously monitored. We feel compelled to expound upon this aspect of our holding because the United States Supreme Court has never directly addressed the Fourth Amendment ramifications of electronic tracking devices, and because the decisions in the Federal Circuit Courts are conflicting.

A number of cases involving electronic beepers have sprung up in the last three years. All except one involved drug investigations. These cases, however, fall into several subcategories. The first class includes those cases which have held that there can be no legitimate expectation of privacy in contraband hence the placement of a beeper in contraband is not a "search": *United States v. Dubrofsky,* 581 F. 2d 208 (9th Cir. 1978); *United States v. Botero,* 589 F. 2d 430 (9th Cir. 1978), *cert. denied,* 99 S.Ct. 2162 (1979); *United States v. Pringle,* 576 F. 2d 1114, 1119 (5th Cir. 1978); *United States v. Emery,* 541 F. 2d 887, 890 (1st Cir. 1976);

*United States v. Perez,* 526 F. 2d 859, 863, *cert. denied,* 429 U.S. 846, 97 S.Ct. 129, 50 L.Ed. 2d 118 (1976), (television with electronic beeper was bartered for heroin by agents); *United States v. French,* 414 F. Supp. 800, 803-04 (W.D. Okla. 1976); *United States v. Carpenter,* 403 F. Supp. 361, 364-65 (D. Mass. 1975). We note that the container of phenyl 2 proponone in the instant case was not an unlawful substance and that these cases are therefore inapposite.

A second class of cases involved attachment of beepers to airplanes with the consent of the owner of the airplane. In several of these cases the court assumed or the prosecutor stipulated that a "search" occurred. Nonetheless, the courts generally held either that the attachment of the beepers came within the third-party consent exception to the warrant requirement or that the monitoring of an airplane's movements did not intrude upon any reasonable expectation of privacy: *United States v. Miroyan,* 577 F. 2d 489 (9th Cir. 1978), *application for stay denied,* 99 S.Ct. 18 (1978), *cert. denied,* 99 S.Ct. 258 (1979); *United States v. Curtis,* 562 F. 2d 1153 (9th Cir. 1977), *cert. denied,* 99 S.Ct. 279 (1979); *United States v. Pretzinger,* 542 F. 2d 517, 520 (9th Cir. 1976); *United States v. Cheshire,* 569 F. 2d 887 (5th Cir. 1978), *cert. denied,* 437 U.S. 907, 98 S.Ct. 3097, 57 L.Ed. 2d 1138 (1978); *United States v. Bruneau,* 594 F. 2d 1190 (8th Cir. 1979); *United States v. Abel,* 548 F. 2d 591 (5th Cir.), *cert. denied,* 431 U.S. 956, 97 S.Ct. 2678, 53 L.Ed. 2d 273 (1977); *United States v. Trussell,* 441 F. Supp. 1092, 1102-06 (M.D. Pa. 1977). Again, even if we were to agree with the holdings in these cases, each would be distinguishable on the facts involved.

A third class of beeper cases also did not address the question of whether a "search" occurred because they found sufficient probable cause and exigent circumstances to attach the beeper without first acquiring a court order: *United States v. Shovea,* 580 F. 2d 1382 (10th Cir. 1978), *cert. denied,* 99 S.Ct. 1216 (1979); *United States v. Frazier,* 538 F. 2d 1322 (8th Cir. 1976); *United States v. French, supra.* Similar exigent circumstances do not exist in the instant case.

The last class of cases actually dealt with the "search" question. Three of these cases found use of the beeper to be a search, and although the third of these cases was reversed on appeal, we

endorse the opinion of the lower court: *United States v. Holmes*, 521 F. 2d 859, 864-67 (5th Cir. 1975), *aff'd by an equally divided court sitting en banc*, 537 F. 2d 227 (1976); *United States v. Bobisink, supra; United States v. Martyniuk*, 395 F. Supp. 42 (D. Or. 1975), *rev'd in part sub nom. United States v. Hufford*, 539 F. 2d 32 (9th Cir.) *cert. denied*, 429 U.S. 1002, 97 S.Ct. 533, 50 L. Ed. 2d 614 (1976).

In contrast, the Ninth Circuit, in *Hufford, supra*, held that installation of a beeper in two drums of caffeine believed to be used in the illegal manufacture of amphetamines was not a Fourth Amendment search because the beepers were installed while the drums remained in the possession of the chemical company, and defendant, as he drove with the canister in his automobile on a public road, did not have a reasonable expectation of privacy. The Ninth Circuit also did not see any Fourth Amendment problems inherent in monitoring the beeper while the canister was located in defendant's garage. Similarly, in *United States v. Clayborne*, 584 F. 2d 346 (10th Cir. 1978), the court found that the monitoring of a container of ethyl ether believed to be used in the illegal manufacture of methamphetamine did not violate any reasonable expectation of privacy when the canister found its way into commercial premises, as opposed to a home. *See, also, United States v. Dubrofsky*, 581 F. 2d at 211. These courts reasoned that the beeper is but an aid to visual observation, that it presents only a minimal intrusion, and that its use is no different than use of binoculars, dogs, fluorescent powders, automobiles, burglar alarms, radar devices and bait money. We cannot agree.

In a free and democratic society in which the rights of privacy are cherished, it is reasonable for an individual to expect that he may purchase a lawful good without having that good contaminated with surreptitiously installed governmental surveillance devices. As the court stated in *United States v. Bobisink, supra*:

"There is nothing in the nature of these beepers which limits their use to automobiles and large packages. Presumably, no technological problem prevents agents from placing such devices on, for example, a person's clothing. Thus, an individual could be traced on a moment to moment basis as he went about his daily activities. It offends common sense to

suggest that such a continuous electronic surveillance would not violate any reasonable expectation of privacy. To allow such indiscriminate monitoring could conceivably be the prelude to sanctioning a '1984' net work of such beepers connected to a master monitoring station which would keep track of each of our movements for the benefit of the powers that be. Certainly the average, reasonable citizen, with his reasonable expectation of privacy, would take little solace in the fact that, while his every movement was recorded, his conversations were not."

415 F. Supp. at 1339.

[2]   Moreover, even though we recognize that an individual's expectation of privacy with regard to movement in an automobile is lesser than that, for example, which he would have in his home, *United States v. Chadwick*, 433 U.S. 1, 12, 97 S.Ct. 2476, 2484, 53 L.Ed. 2d 538, 549 (1977), we do not find that automobiles are devoid of Fourth Amendment protection. Indeed, in a very recent opinion, Mr. Justice White, for the United States Supreme Court, has stated:

". . . Automobile travel is a basic, pervasive, and often necessary mode of transportation to and from one's home, workplace, and leisure activities. Many people spend more hours each day travelling in cars than walking on the streets. Undoubtedly, many find a greater sense of security and privacy in travelling in an automobile than they do in exposing themselves by pedestrian or other modes of travel. Were the individual subject to unfettered governmental intrusion every time he entered an automobile, the security guaranteed by the Fourth Amendment would be seriously circumscribed . . . ."

*Delaware v. Prouse*, 99 S.Ct. 1391, 1401 (1979). Consequently, we agree with the Fifth Circuit in *United States v. Holmes, supra*, that the installation and monitoring of a beeper located in or on a motor vehicle constitutes a Fourth Amendment search. *Cf. United States v. Moore*, 562 F. 2d at 112-13 (probable cause necessary to justify use of beepers to track vehicles without a warrant).

[1]   Finally, we follow the First Circuit in *United States v. Moore, supra*, in holding, in a fact situation similar to the instant

case, that the installation of a beeper in a container of lawful chemicals, constituted a search when the device entered defendant's home and was used to determine the continued presence of the chemical in defendant's residence. The court's reasoning is important:

> ". . . When defendants withdrew from the public view, taking the box of chemicals inside with them, they had every right to expect that their activities inside the house which they sought to preserve as private would be free from warrantless intrusion by the Government. Doubtless the limited data transmitted by a beeper was far less revealing than the conversation recorded in *Katz*; the level of intrusion was less severe. Still, as the chemicals containing the transmitter were not contraband or otherwise wrongfully in appellees' possession, the Government had no right to determine their continued presence in the house by use of warrantless electronic surveillance."

562 F. 2d at 113.

We note that this case is distinguishable from *Smith v. Maryland*, 99 S.Ct. 2577 (1979), in which the Supreme Court held that a phone company's installation and use, at police request, of electronic "pen register" to record telephone numbers dialed from a suspected robber's home phone, was not a "search" requiring a warrant under the Fourth Amendment. There the Court recognized that it is commonly expected that phone companies have and utilize facilities which record telephone numbers for purposes of checking billing operations and detecting fraud. There is no similar expectation in the instant case that people expect their automobiles, effects and homes will have electronic shadows secretly affixed by government agents.

Having found that a search occurred at each stage of the installation and monitoring of the beeper, we do not need to address the question of whether defendant had standing to challenge the search at each stage. Defendant, at the very least, has standing resulting from his possessory interest in his home. *Mancusi v. Deforte*, 392 U.S. 364, 369, 88 S.Ct. 2120, 2124, 20 L.Ed. 2d 1154, 1160 (1968).

[3] The remaining question, then, is whether the "search" was "unreasonable" in contravention of the Fourth Amendment. *Terry*

*v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968). Unless, when viewed with practicality and common sense, the facts disclose exigencies constituting an exception, a search is unreasonable if it is not preceded by a warrant issued by an independent magistrate. *Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). Where electronic beepers are involved, such a warrant should be based upon facts sufficient to show probable cause and particularity, and these requirements will be met if the following facts are shown: (1) that a crime has been, is being or is about to be committed; (2) that tracking of the persons or property specified in the application is likely to reveal evidence of the crime, or the location of the criminals; (3) that the persons or property to be tracked are directly involved in the crime; (4) that alternative methods of investigations are likely to be burdensome or ineffective; (5) that existing exigent circumstances justify withholding notice of the search; and (6) that the persons or property to be traced are sufficiently identified. Similarly, the order issued by the magistrate should be no more intrusive than is necessary and should insure: (1) that the purpose of the search is narrowly defined; (2) that the identity of the object on which and the method by which the beeper is attached is articulated; (3) that the time period during which the search may be conducted is limited; (4) that the conditions requiring termination of the search in advance of the specified time limit are stated; (5) that a return report on search activities will be submitted; and (6) that subsequent notice to the parties searched will be provided. Tracking *Katz*: Beepers, Privacy and the Fourth Amendment, 86 Yale L.J. at 1507.

[1]   In the case *sub judice*, a Federal Magistrate approved the initial warrant for the installation of the beeper and the validity of that warrant is not challenged other than by the general assertion that defendant's Fourth Amendment rights have been violated. Consequently, we do not now pass upon the validity of the initial warrant. The record does not disclose the scope of the initial warrant or the affidavits upon which such warrant was issued. We do not know, for example, if the initial warrant extended only to possession of the canister by Parks or Johnson. It is unlikely that the initial warrant went so far as to specifically authorize the entry of the beeper into defendant's home, but we can only assume that, as the purpose of the device was apparent-

ly to locate a clandestine laboratory, that the initial warrant allowed the drug enforcement officers to follow the beeper to its ultimate destination. We note that the primary protection of the Fourth Amendment was afforded by the intervention of a neutral and detached magistrate in deciding whether a search may properly occur, *Johnson v. United States, supra,* and that, without more information, we must find that the beeper search which consisted of the entry into and monitoring of the beeper within defendant's home, was reasonable.

## II.

### PROBABLE CAUSE TO ISSUE THE SEARCH WARRANT

[4] Having found that the monitoring of the beeper in defendant's house was not unlawful, we now address the question of whether the information obtained from the beeper along with other statements in Officer Morgan's affidavit established sufficient probable cause to justify a warrant for the search of defendant's private residence. *Aguilar v. State of Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed. 2d 723 (1964). We hold that the warrant for the search of defendant's home was properly issued.

A lesser standard of proof is required to determine probable cause to arrest or search than would be required to establish guilt at trial. The quantum and value of the information in the affidavit must only establish a probability that criminal activity has occurred or is about to occur on the described premises. *Brinegar v. United States,* 338 U.S. 160, 172-75, 69 S.Ct. 1302, 93 L.Ed. 1879, 1888-90 (1949). In addition, the source of the information must be reliable and such reliability will be enhanced if corroborated and supported by other facts and underlying circumstances. *Draper v. Illinois,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed. 2d 327 (1959).

In the case *sub judice,* the statements by John Nelson revealing the existence of a clandestine laboratory operation were made against his penal interest and were thereby inherently reliable. *United States v. Harris,* 403 U.S 573, 583, 91 S.Ct. 2075, 29 L.Ed. 2d 723, 734 (1971). Moreover, Nelson's statements were not stale because they were corroborated by the subsequent chain of activity by both Johnson and Parks.

The manner of purchase and the nature of the chemicals purchased are also highly probative. Southeastern Tank and Steel Service gave university and residential addresses, not a commercial address. Further, common sense would suggest that it is not a customary business practice for an individual to drive 800 miles and to pay three thousand dollars in cash, in order to purchase 70 kilograms of chemicals, as opposed to payment by check and shipment through the normal channels of commerce. These activities are not illegal, but when coupled with the statements of the S.B.I. chemists that the only use of phenyl 2 propone known to them was for the manufacture of amphetamines, these activities make it likely that criminal activity is afoot. Similarly, the officers visually observed Parks' furtive movements in his automobile, and even though this questionable elusive behavior would by itself be insufficient to establish probable cause, *United States v. Long*, 439 F. 2d 628, 630 (D.C. Cir. 1971), it is consistent with and serves to revive Nelson's earlier statements that Parks was involved in a clandestine drug laboratory operation and that the laboratory was to obtain a new situs as soon as the principals procured more supplies.

None of these factors alone implicates defendant or his home. However, other data in the affidavit serve to link defendant's home to this activity: (1) the three visits to defendant's home by Parks; (2) the indication from the beeper that Parks went to defendant's home with the canister and beeper and thereafter left the canister within defendant's curtilage; (3) the visit by Nelson, the original informant and an admitted participant in an illegal methamphetamine laboratory, to defendant's house; and (4) the observance by the officers on several occasions of someone in defendant's house wearing a white smock resembling a chemist's garb. Together these statements are sufficient to raise a reasonable probability that activity related to a clandestine drug laboratory was being conducted in defendant's house. *See, United States v. Moore*, 562 F. 2d at 109-10.

We find no merit in defendant's contentions as to conclusory language in the affidavit because sufficient probative facts were alleged to establish probable cause, thereby rendering any conclusory language to be without prejudicial effect.

The decision of the trial court in denying the motion to suppress evidence is

Affirmed.

Judges ERWIN and WELLS concur.